**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STOYAN KOLEV, JOHNNIE PARKS, PETER DOBRZYNIECKI, LUDWIK DRUZD, CASEY JONES, JESUS RUIZ, and ARNULFO VIEJO, individually and behalf of all others similarly situated, | : Civil Action No.: 1:21-cv-15107<br>:<br>: **Document Electronically Filed**<br>:<br>: |
| Plaintiffs, | : |
| v. | : |
| NATIONAL FREIGHT, INC. and NFI INTERACTIVE LOGISTICS, LLC, | : |
| Defendants. | : |

**CLASS ACTION COMPLAINT**

**I.     INTRODUCTION**

1.     Plaintiffs Stoyan Kolev, Johnnie Parks, Peter Dobrzyniecki, Ludwik Druzd, Casey Jones, Jesus Ruiz, and Arnulfo Viejo (collectively, "Plaintiffs") bring this class action on behalf of themselves and a class of persons similarly situated, who have worked as delivery drivers for Defendants National Freight, Inc. and NFI Interactive Logistics, LLC (collectively "NFI" or "Defendants") within Illinois at any time during the applicable limitations period, who performed delivery services out of NFI's warehouses in Elwood, Illinois, Minooka, Illinois, and Woodridge Illinois, and elsewhere, for companies such as Target, Starbucks, and Steinmart, and who were classified as independent contractors rather than employees.  Plaintiffs allege that although Defendants classified them and other similarly situated delivery drivers as independent contractors, they were in fact Defendants' employees for the purposes of the Illinois Wage Payment and Collections Act ("IWPCA"), 820 ILCS 115/2. Plaintiffs further allege that they, and a class of similarly situated drivers, were not paid proper wages and that improper

1

deductions were made from their wages, in violation of the IWPCA, 820 ILCS 115/9. Additionally, Plaintiffs Kolev and Jones allege that since January 1, 2019, NFI has failed to reimburse them and similarly situated drivers for expenses incurred performing their work, in violation of the IWPCA, 820 ILCS 115/9.5.

2.  In the alternative, and pursuant to a New Jersey choice of law provision in the drivers' contracts with NFI, Plaintiffs allege that NFI violated the New Jersey Wage Payment Law, N.J. Stat § 34:11-4.1. *et seq.* ("NJWPL"). As a result of Defendants' practice of improperly classifying its delivery drivers as independent contractors, the delivery drivers have been subject to improper deductions from their pay, in violation of the NJWPL, and have otherwise been unjustly forced to bear the costs of NFI's business.

3.  The Independent Contractor Operating Agreement, which each Plaintiff was required to sign in order to work for Defendants, includes a forum selection clause requiring all disputes to be brought in the state or federal courts serving Camden County, New Jersey. Additionally, the Independent Contractor Operating Agreement includes a choice of law provision stating that New Jersey law governs.

**II.   PARTIES**

4.  Defendant National Freight, Inc. ("National Freight") is a corporation organized under the laws of the State of New Jersey with its headquarters in Camden, New Jersey.

5.  Defendant NFI Interactive Logistics, LLC ("NFI Logistics") is a corporation organized under the laws of New Jersey with its headquarters in Camden, New Jersey.

6.  Upon information and belief, Defendants are the same business, operating out of the same principal place of business. Defendants are operated by the same individuals and have common ownership.

7. Plaintiff Stoyan Kolev is an adult resident of Sugar Grove, Illinois. Mr. Kolev worked for NFI from approximately 2009 to May 2021 as a delivery driver hauling freight and delivering goods in Illinois, for companies such as Target, Starbucks, and Steinmart, on behalf of NFI.

8. Plaintiff Johnnie Parks is an adult resident of Chicago, Illinois. Mr. Parks worked for NFI from approximately 2011 to 2013 as a delivery driver hauling freight and delivering goods in Illinois, for companies such as Target, Starbucks, and Steinmart, on behalf of NFI.

9. Plaintiff Peter Dobrzyniecki is an adult resident of Willow Springs, Illinois. Mr. Dobrzyniecki worked for NFI from approximately 2009 to 2015 as a delivery driver hauling freight and delivering goods in Illinois, for companies such as Target, Starbucks, and Steinmart, on behalf of NFI.

10. Plaintiff Ludwig Druzd is an adult resident of Elmwood Park, Illinois. Mr. Druzd worked for NFI from approximately 2009 to 2015 as a delivery driver hauling freight and delivering goods in Illinois, for companies such as Target, Starbucks, and Steinmart, on behalf of NFI.

11. Plaintiff Casey Jones is an adult resident of Country Club Hills, Illinois. Mr. Jones worked for NFI from approximately 2016 to 2019 as a delivery driver hauling freight and delivering goods in Illinois, for companies such as Target, Starbucks, and Steinmart, on behalf of NFI.

12. Plaintiff Jesus Ruiz is an adult resident of Peru, Illinois. Mr. Ruiz worked for NFI from approximately 2011 to August 2018 as a delivery driver hauling freight and delivering goods in Illinois, for companies such as Target, Starbucks, and Steinmart, on behalf of NFI.

13. Plaintiff Arnulfo Viejo is an adult resident of Berwyn, Illinois. Mr. Viejo worked

for NFI from approximately 2012 to 2016 as a delivery driver hauling freight and delivering goods in Illinois, for companies such as Target, Starbucks, and Steinmart, on behalf of NFI.

14. Plaintiffs bring this action on their own behalf as well as on behalf of a class of similarly-situated individuals including all other persons who have worked for NFI as delivery drivers operating in Illinois at any time during the applicable limitations period who performed deliveries for NFI and who have been classified as independent contractors rather than employees.

### III. JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453 ("CAFA"). The putative class consists of at least 50 proposed class members. The citizenship of at least one member of the proposed Class is diverse from that of at least one Defendant, as each of the Plaintiffs are residents of different states than that of NFI. Upon information and belief, the amount in controversy in this action exceeds $5,000,000.

16. This Court has personal jurisdiction over the parties to this action pursuant to the forum selection provision of the Independent Contractor Operator Agreement between Plaintiffs and NFI.

17. Venue in this Court is appropriate pursuant to the forum selection provision of the Independent Contractor Operator Agreement between Plaintiffs and NFI. Additionally, NFI's principal place of business is in Camden, New Jersey. Therefore, venue in the District of New Jersey is proper pursuant to 28 U.S.C. § 1391(b).

### IV. STATEMENT OF FACTS

18. NFI is a leading provider of transportation, logistics and distribution services,

providing its services to companies such as Target, Starbucks, and Steinmart. In order to perform those services, NFI utilizes both employee drivers as well as drivers whom it purports to classify as independent contractors, such as Plaintiffs and Class Members. The employee drivers performed the same job duties as Plaintiffs and Class Members. The Independent Contractor Operating Agreement between Plaintiffs and NFI contains a choice of law provision stating "This Agreement shall be interpreted in accordance with, and governed by, the laws of the United States and, of the laws of the United States and, of the State of New Jersey, without regard to the choice-of-law rules of New Jersey or any other jurisdiction."

19. NFI has warehouses that it either owns or leases in Elwood, Minooka, and Woodridge, Illinois, and elsewhere, from which drivers working for NFI pick up and deliver merchandise for Target, Starbucks, and Steinmart stores throughout Illinois.

20. Plaintiffs and Class Members are required to have their own trucks to perform delivery services. NFI requires that all trucks bear the NFI logo and operate under its Department of Transportation Number.

21. The trailers, which the drivers pick up at NFI's warehouses are also embossed with NFI's logos and owned by NFI.

22. Plaintiffs and Class Members were entirely dependent upon NFI for their business, as they were not permitted to perform delivery services for any other company during their time working for NFI.

23. Plaintiffs and Class Members generally worked full time, five or six days per week, 12 to 14 hours per day, and would report to NFI's warehouses each day to pick up the trailers full of merchandise (or in the case of drivers who used box trucks, to have their box trucks loaded). Upon information and belief, employees of NFI would load the merchandise.

Also present at the NFI warehouses were employee drivers of NFI who would also pick up merchandise for delivery for local Target, Starbucks, and Steinmart stores.

24. Plaintiffs and Class Members were assigned a set route each day and given a schedule which indicated the "pull time," which was the time that they were supposed to depart from the NFI warehouses, in order to make deliveries. Plaintiffs and Class Members were required to arrive at the NFI warehouse sufficiently prior to their listed pull time, typically at least thirty minutes. NFI would constantly call Plaintiffs and Class Members on their cellphones if they were not at the NFI warehouse early enough. The schedule provided to Plaintiffs and Class Members also listed a delivery time for each stop. Plaintiffs and Class Members were not allowed to deviate from the schedule. Plaintiffs and Class Members' movements were monitored by NFI dispatch via a GPS system. NFI required Plaintiffs and Class Members to install the GPS system into their trucks.

25. Plaintiffs and Class Members were to be paid a percentage of the price NFI charged its customer for each load and received additional compensation for fuel surcharges dependent upon the price of fuel. Plaintiffs and Class Members could not negotiate the price per load or the price paid for fuel surcharges. Often times, NFI would delay increases in the fuel surcharge amounts for several weeks when the cost of fuel increased. When the cost of fuel decreased, the fuel surcharge amounts would be immediately calculated.

26. Despite executing a contract with Plaintiffs and Class Members, promising to pay drivers a certain percentage, NFI would frequently pay Plaintiffs and Class Member less than the agreed-upon percentage for certain loads. More often than not, NFI would not pay drivers the actual percentage for a particular load, but instead a pre-determined figure by NFI.

27. Plaintiffs and Class Members were also responsible for returning merchandise to

NFI's warehouses from Starbucks and Steinmart stores, or other locations. Often times, Plaintiffs and Class Members were not paid for such work. In addition, NFI dispatchers would direct Plaintiffs and Class Members to pick up merchandise outside their set routes and would not pay them accordingly. Plaintiffs and Class Members were also required to attend safety meetings and other company meetings that did not always result in additional pay for the drivers.

28.     Plaintiffs and Class Members were required to pay for their own workers' compensation insurance, liability insurance and other job related insurance. These amounts were deducted from Plaintiffs and Class Members' weekly settlement statements by NFI. In addition, NFI required all drivers, including Plaintiffs and Class Members, to place monies into an escrow account purportedly to cover damage claims made by third parties.

29.     Plaintiffs and Class Members were also required to use the GPS system that NFI used to track deliveries. Plaintiffs and Class Members were required to purchase this system and have weekly amounts deducted from their settlement statements to pay for same.

30.     While NFI classified Plaintiffs and Class Members as "independent contractors," the nature of the services that Plaintiffs and Class Members performed, and the manner in which they performed these services, made it clear that they were actually employees. NFI was in complete control of the manner in which Plaintiffs and Class Members and others performed their services.

31.     Plaintiffs and Class Members performed services, pickup and delivery of products and material, which was/is within the usual course of business of NFI.

32.     For example, Plaintiffs were required to report to NFI's warehouses each day to perform deliveries for NFI.

33.     Plaintiffs and Class Members were entirely dependent upon NFI for their work, as

they were only allowed to perform courier/delivery services for NFI. Plaintiffs and Class Members typically worked five (5) or six (6) days per week, and approximately twelve (12) hours per day. Additionally, the trailers the drivers pulled were owned by NFI and bore NFI's logo. Moreover, the drivers were required to install NFI's GPS system in their trucks so that NFI could monitor their movements.

    34.    Although NFI claims that Plaintiffs and Class Members were hired as independent contractors, NFI controlled nearly every aspect of Plaintiffs and Class Members' work. Such control includes, but is not limited to, the following:

    a.    NFI required Plaintiffs and Class Members to comply with the instructions dictated by written and unwritten policies, procedures and directives regarding Plaintiffs and Class Members' duties.

    b.    NFI issued delivery manifests which instruct Plaintiffs and Class Members regarding the order and manner in which deliveries are to be made. For example, Plaintiffs are required to arrive at the NFI warehouses well in advance (usually at least thirty minutes before) they are scheduled to depart on their route each day. Plaintiffs and Class Members cannot deviate from the order of delivery nor do they have any say in the amount of deliveries they are to make each day.

    c.    NFI employs managers who have supervisory responsibility over Plaintiffs and Class Members and who could and did assign and direct their work. Plaintiffs and Class Members received calls on a daily basis from terminal dispatch directing their work. NFI monitored Plaintiffs' and Class Members' work via a GPS tracking system.

    d.    Plaintiffs and Class Members were required to perform delivery services during fixed hours each day that they worked.

e. NFI required Plaintiffs and Class Members to use NFI's scanning/radio devices so that deliveries could be tracked and downloaded to NFI's computer systems.

f. NFI required Plaintiffs and Class Members to obtain insurance in certain amounts such as non-trucking liability insurance, occupational accident insurance, physical damage insurance on tractor, and passenger insurance.

g. Plaintiffs and Class Members had no control over the amount(s) charged for their delivery services. They did not negotiate with retail customers regarding the rates charged for their services.

35. NFI, at their sole discretion, could also make deductions from Plaintiffs and Class Members' statements for damage claims.

36. Plaintiffs and Class Members are not customarily engaged in an independently established trade, occupation, profession, or business. Plaintiffs and Class Members were entirely dependent upon NFI for their work and were not allowed to offer their services to any other company.

37. NFI deducted certain expenses directly from Plaintiffs' and Class Members' wages, including deductions for various insurances (such as workers' compensation, trucking liability and cargo), any related insurance claims, the cost of the mandated GPS system, and others. NFI also deducted from Plaintiffs' and Class Members' wages to maintain a $1,500 escrow account.

38. NFI did not get Plaintiffs and other Class Members' freely given express written consent at the time it made deductions from their wages. Nor to the extent Plaintiffs and other Class Members allegedly provided advance ongoing consent to such deductions did NFI advise them that they could revoke their consent at any time.

39. The deductions taken by NFI were not for a uniform amount, but rather varied with each paycheck.

40. Additionally, since January 1, 2019, NFI has failed to reimburse Plaintiffs Kolev and Jones and other Class Members' necessary business expenses, such as the cost of maintenance, fuel, the cost of various insurances, any related insurance claims, tolls, registration fees, and other costs.

## VI. CLASS ALLEGATIONS

41. Plaintiffs bring this action individually and on behalf of:

All individuals who were classified as independent contractors while performing delivery services on behalf of Defendants for Target, Starbucks, or Steinmart stores anywhere in Illinois during the applicable limitations period. (the "Class").

42. The requirements of Fed. R. Civ. P. Rule 23 are met in that:

   a. Class Members are so numerous that joinder of all members would be impracticable. During the relevant period it is believed that there are more than 50 Class Members.

   b. NFI engages in a common course of conduct that violated the legal rights of Plaintiffs and Class Members. There are numerous material questions of law or fact common to the Class that will necessarily dominate the Court's analysis of Plaintiffs' claims, including primarily whether Plaintiffs and Class Members were Defendants' employees rather than independent contractors under the IWPCA, or in the alternative, the NJWPL, and whether Defendants made unlawful deductions from Plaintiffs' and Class Members' pay under the IWPCA or in the alternative, the NJWPL, and whether NFI failed to reimburse the drivers' expenses under the IWPCA.

   c. Plaintiffs' claims are typical of the claims belonging to absent Class

Members. Plaintiffs and Class Members are similarly-situated employees who performed the same work under the same conditions, were Defendants' employees under the IWPCA, or in the alternative, the NJWPL, had improper deductions taken out of their pay in violation of the IWPCA, or in the alternative, the NJWPL, and, as a result, suffered the same type of harm. Additionally, Plaintiffs Kolev and Jones suffered the same type of harm as similarly situated drivers resulting from NFI's failure reimburse expenses in violation of the IWPCA.

d. Plaintiffs and their counsel will fairly and adequately represent the interests of the Class. Plaintiffs have no interests adverse to or in conflict with those of other Class Members.

e. Plaintiffs have retained competent and experienced class action counsel who will vigorously prosecute this action. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including cases like this one, and will fairly and adequately protect the interests of the Class;

f. Allowing this action to proceed as a class action will provide a fair and efficient method for adjudication of the issues presented by this controversy. Common questions of law or fact predominate over any questions affecting only individual members, as Plaintiffs seek to remedy a shared legal grievance (*e.g.*, non-payment of wages, improper deductions, NFI's failure to reimburse expenses) and shared harm (*e.g.*, unpaid wages and employment benefits) on behalf of the Class of similarly-situated employees;

g. A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims. The relief sought by individual Class Members is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by NFI's conduct. Individual litigation of the legal and factual issues raised by

NFI's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the Class' claims, achieve economies of scale for the Court and the parties, and result in a binding and uniform adjudication on each issue for every party.

## Count I
### Unlawful Deductions in Violation of the Illinois Wage Payment and Collection Act
### (820 ILCS 115/1 *et seq.*)
### (All Plaintiffs, Class Action)

43. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

44. Defendants, as employers under the IWPCA, violated 820 ILCS 115/1 *et seq.*, by requiring: (a) that Plaintiffs and Class Members be subject to deductions from their paychecks for any alleged damage or problem with any delivery; and (b) that Plaintiffs and Class Members be subject to deductions from their paychecks for such costs as workers' compensation insurance, and liability insurance, among others.

45. Plaintiffs and the Class are entitled to damages in an amount to be proven at trial.

## Count II
### Unpaid Wages in Violation of the Illinois Wage Payment and Collection Act
### (820 ILCS 115/1 *et seq.*)
### (All Plaintiffs, Class Action)

46. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

47. Defendants, as employers under the IWPCA, violated 820 ILCS 115/1 *et seq.*, by regularly failing to pay Plaintiffs and Class Members the agreed upon percentage for each load delivered.

48. Plaintiffs and the Class are entitled to damages in an amount to be proven at trial.

## COUNT III
**Failure to Reimburse Expenses in Violation of the Illinois Wage Payment and Collection Act (820 ILCS 115/9.5)**
**(Plaintiffs Kolev and Jones, Class Action)**

49. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

50. Defendants, as employers under the IWPCA, violated 820 ILCS 115/9.5, by regularly failing to reimburse Plaintiffs Kolev and Jones, and the class, for necessary business expenses, including but not limited to the cost of fuel, tolls, various insurances, registration fees, and other costs, since January 1, 2019.

51. Plaintiffs Kolev and Jones, and the Class, are entitled to damages in an amount to be proven at trial.

## COUNT IV (In the Alternative to Counts I, II, and III)
**Unjust Enrichment, Illinois Common Law**
**(All Plaintiffs, Class Action)**

52. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

53. As a result of Defendants' conduct as described above, Defendants unjustly enriched themselves to the detriment of Plaintiffs and Class Members in violation of the common law of Illinois. Such unjust enrichment includes NFI requiring Plaintiffs and Class Members to be subject to deductions for the costs of worker's compensation insurance, liability insurance, and fuel, among others, and shifting NFI's business expenses to Plaintiffs and Class Members.

54. Plaintiffs and the Class are entitled to damages in an amount to be proven at trial.

## COUNT V (In the Alternative to Counts I, II, III, and IV)
**Violation of New Jersey Wage Payment Law (N.J. Stat § 34:11-4.2 and § 34:11-4.4)**
**(All Plaintiffs, Class Action)**

55. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

56. The Independent Contractor Operating Agreements between Defendants and Plaintiffs and Class Members contain a New Jersey choice of law provision stating "This Agreement shall be interpreted in accordance with, and governed by, the laws of the United States and, of the laws of the United States and, of the State of New Jersey, without regard to the choice-of-law rules of New Jersey or any other jurisdiction."

57. Defendants are incorporated in New Jersey and maintain their headquarters in New Jersey.

58. Defendants, as employers under the NJWPL, violated N.J. Stat § 34:11-4.1. *et seq.*, by requiring: (a) that Plaintiffs and Class Members be subject to deductions from their paychecks for any alleged damage or problem with any delivery; (b) that Plaintiffs and Class Members be subject to deductions from their paychecks for such costs as workers' compensation insurance, liability insurance, and fuel, among others; and (c) by regularly failing to pay Plaintiffs and Class Members for all miles driven and for all the time that they worked.

59. Plaintiffs and the Class are entitled to damages in an amount to be proven at trial.

### COUNT VI (In the Alternative to Counts IV and V)
### Unjust Enrichment, New Jersey Common Law
### (All Plaintiffs, Class Action)

60. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

61. As a result of Defendants' conduct as described above, Defendants unjustly enriched themselves to the detriment of Plaintiffs and Class Members in violation of the common law of New Jersey. Such unjust enrichment includes NFI requiring Plaintiffs and Class Members to be subject to deductions for the costs of worker's compensation insurance, liability insurance, and fuel, among others, and shifting NFI's business expenses to Plaintiffs and Class Members.

62. Plaintiffs and the Class are entitled to damages in an amount to be proven at trial.

## Prayer for Relief

WHEREFORE, Plaintiffs pray that this Court:

(1)   Certify this action as a class action under Fed. R. Civ. P. 23;

(2)   Grant Plaintiffs and the Class Members damages as proved at trial, including damages for the deductions taken from Plaintiffs' compensation checks;

(3)   Statutory damages pursuant to the formula set forth in 820 ILCS 115/14(a)

(4)   Prejudgment interest to the fullest extent permitted under law;

(5)   Litigation costs, expenses and attorneys' fees to the fullest extent permitted under law; and

(6)   Such other and further relief as this Court deems just and proper.

Dated: August 10, 2021

Respectfully submitted,

STOYAN KOLEV, JOHNNIE PARKS, PETER DOBRZYNIECKI, LUDWIK DRUZD, CASEY JONES, JESUS RUIZ, and ARNULFO VIEJO individually and on behalf of all others similarly situated,

Plaintiffs,

/s/ Zach Rubin
Zachary Rubin
NJ Bar No. 179052015
Harold Lichten (*pro hac vice* forthcoming)
Sarah Schalman-Bergen (*pro hace vice* forthcoming)
Thomas Fowler (*pro hac vice* forthcoming)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Fax: (617) 994-5801
zrubin@llrlaw.com
hlichten@llrlaw.com
ssb@llrlaw.com
tfowler@llrlaw.com

Bradley Manewith (*pro hac vice* forthcoming)
Marc Siegel (*pro hac vice* forthcoming)
James Rogers (*pro hac vice* forthcoming)
SIEGEL & DOLAN, LTD.
150 N. Wacker Dr., Ste. 3000
Chicago, IL 60601
Telephone: (312) 878-3210
Fax: (312) 878-3211
bmanewith@msiegellaw.com
msiegel@msiegellaw.com

*Attorneys for Plaintiffs*