# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STOYAN KOLEV, JOHNNIE PARKS, PETER DOBRZYNIECKI, LUDWIK DRUZD, CASEY JONES, JESUS RUIZ, and ARNULFO VIEJO, individually and on behalf of all others similarly situated, | No. 1:21-cv-15107-JHR-MJS<br><br>Judge Joseph H. Rodriguez<br>Magistrate Judge Matthew J. Skahill |
| Plaintiffs, | **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| v. | Motion Date: December 6, 2021 |
| NATIONAL FREIGHT, INC. and NFI INTERACTIVE LOGISTICS, LLC, | **ORAL ARGUMENT REQUESTED** |
| Defendants. |  |

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ........................................ **Error! Bookmark not defined.**

II.    THE COURT SHOULD DISMISS PLAINTIFF KOLEV AND
       DEFENDANT NATIONAL FREIGHT, INC.............. **Error! Bookmark not defined.**

      A.     Mr. Kolev's Forum Selection Clause Controls. **Error! Bookmark not defined.**

      B.     National Freight, Inc. Is Not A Joint Employer **Error! Bookmark not defined.**

III.   THE TIL REGULATIONS PREEMPT STATE LAW BY
       PRESERVING THE RIGHT TO CONTRACT. ........ **Error! Bookmark not defined.**

IV.    THE IC AGREEMENTS REQUIRED DISMISSAL OF COUNT I.... **Error! Bookmark not defined.**

V.     PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL. ................. **Error! Bookmark not defined.**

VI.    CONCLUSION............................................ **Error! Bookmark not defined.**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Careers USA, Inc.*,
  No. CV 20-2357, 2021 WL 2577043 (E.D. Pa. June 23, 2021)...........................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................11

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49 (2013).................................................................................................5, 7

*Bell v. Bimbo Foods Bakeries Distribution, Inc.*,
  No. 11 C 03343, 2013 WL 6253450 (N.D. Ill. Dec. 3, 2013)....................14, 15

*Bolden v. Nat'l Fin. Servs. LLC*,
  No. 04-5527 (WHW), 2005 WL 8175134 (D.N.J. May 23, 2005) .....................8

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ...............................................................................12

*Carroll v. Sunrise Detox Cherry Hill, LLC*,
  No. CV 19-17287, 2020 WL 4218409 (D.N.J. July 22, 2020)
  (Rodriguez, J.)............................................................................................................8

*Choice Sec. Sys., Inc. v. AT&T Corp.*,
  141 F.3d 1149 (1st Cir. 1998) .................................................................................4

*Collins v. Mary Kay, Inc.*,
  874 F.3d 176 (3d Cir. 2017) ....................................................................................4

*D/H Oil & Gas Co. v. Com. & Indus. Ins. Co.*,
  No. 3:04-CV-448-RV/MD, 2005 WL 1153332 (N.D. Fla. May 9,
  2005) ...........................................................................................................................5

*Dzielak v. Whirlpool Corp.*,
  120 F. Supp. 3d 409 (D.N.J. 2015).........................................................................9

*Fid. Fed. Sav. And Loan Ass'n v. de la Cuesta*,
  458 U.S. 141 (1982)..................................................................................................9

*In re: Howmedica Osteonics Corp*,
  867 F.3d 390 (3d Cir. 2017) ...............................................................................5, 6

*Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*,
  859 F. Supp. 2d 706 (D.N.J. 2012)........................................................................12

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
　119 F.3d 1070 (3d Cir. 1997) ............................................................................3

*Mind-Peace, Inc. v. Pharmacon Int'l Inc.*,
　No. 2:06CV632, 2006 WL 2849811 (S.D. Ohio Oct. 2, 2006)......................4, 5

*Mulligan v. QVC, Inc.*,
　382 Ill. App. 3d 620 (Ill. App. Ct. 2008) ...........................................................15

*Mut. Pharm. Co. v. Bartlett*,
　570 U.S. 472 (2013)...............................................................................................9

*National Amusements v. Turnpike Auth.*,
　261 N.J. Super. 468 (N.J. Super. Ct. 1992) .......................................................15

*Osorio v. The Tile Shop, LLC*,
　No. 15 C 15, 2015 WL 7688442 (N.D. Ill. Nov. 27, 2015) ..............................13

*Portillo v. National Freight, Inc.*,
　No. 15-CV-7908-JHR-KMW, 2021 WL 3486894 (D.N.J. Aug. 9,
　2021) ................................................................................................................2, 3

*Selective Way Ins. Co. v. Glasstech, Inc.*,
　191 F. Supp. 3d 350 (D.N.J. 2016)......................................................................7

*Sikkelee v. Precision Airmotive Corp.*,
　822 F.3d 680 (3d Cir. 2016) ................................................................................9

*Trico Elec. Coop., Inc. v. Sensus USA, Inc.*,
　No. CV 11-182 TUC-DCB, 2011 WL 13233552 (D. Ariz. Nov. 8,
　2011) ....................................................................................................................4

*W.H. Breshears, Inc. v. Del. N. Cos. Parks & Resorts at Yosemite,
Inc.*,
　No. 1:16-CV-1129 AWI SAB, 2016 WL 7010501 (E.D. Cal. Nov.
　30, 2016) ..............................................................................................................4

*Wang v. Saker Shoprites, Inc.*,
　No. CV162443MASTJB, 2017 WL 380911 (D.N.J. Jan. 26, 2017)...................8

**Statutes**

820 Ill. Comp. Stat. Ann. 115/9 ......................................................................11, 13

820 Ill. Comp. Stat. Ann. 115/9.5 .........................................................................14

**Other Authorities**

49 C.F.R. § 376.12(c)(4) ...........................................................................................10

Fed. R. Civ. P. 23 ........................................................................................................3

Fed. R. Civ. P. 23(d) ...................................................................................................2

Ill. Admin. Code tit. 56, § 300.720 ..........................................................................12

Lease and Interchange of Vehicles, 129 M.C.C. 700 (June 13, 1978) ....................10

Lease and Interchange of Vehicles, 131 M.C.C. 141 (Jan. 9, 1979) ...................9, 10

## I.    INTRODUCTION

On October 18, 2021, Defendants moved to dismiss two parties and five claims from this case. Plaintiffs opposed the motion, arguing Defendants make "sprawling" arguments and unsupported allegations. The reality is, Plaintiffs filed a six-count complaint on behalf of seven people against two defendants. Plaintiffs assert three Illinois wage claims as their primary claims; a New Jersey wage claim as an alternative secondary claim; and two common law unjust enrichment claims as tertiary, alternative-to-the-alternative claims. Defendants' Motion to Dismiss aims to clean up the unwieldy Complaint. It has already partly done so. In response, Plaintiffs' state they will dismiss two named Plaintiffs who never worked for Defendants during the relevant period. ECF 29, PageID 531, n.2.

The Court should trim the other unviable parties and legal claims by granting Defendants' Motion to Dismiss in its entirety. As to the parties, the Court should dismiss Plaintiff Kolev because his claims are subject to the Texas forum selection clause in his IC Agreement.[1] The Court should dismiss defendant National Freight, Inc. because Plaintiffs fail to allege facts showing National Freight, Inc. jointly employed them. As for the claims, the Court should dismiss Counts I, III and V because federal TIL Regulations preempt them. In addition, the Court should dismiss

---

[1] Shortened terms have the same meaning as in Defendants' Motion to Dismiss.

1

Count I (unlawful deductions under the ILWPCA) because even if Plaintiffs were employees, the IC Agreements prove the ILWPCA permits the deductions about which they complain. Finally, the Court should dismiss Plaintiffs' unjust enrichment claims (Counts IV and VI) because they fail as a matter of law.

## II.   THE COURT SHOULD DISMISS PLAINTIFF KOLEV AND DEFENDANT NATIONAL FREIGHT, INC.

### A.   MR. KOLEV'S FORUM SELECTION CLAUSE CONTROLS.

NFI moved to dismiss (or in the alternative, transfer) Mr. Kolev's claims because his IC Agreement includes a Texas forum selection clause. ECF 22-2, PageID 127-28. In Opposition, Plaintiffs rely mainly on the Court's opinion and order in *Portillo v. National Freight, Inc.*, No. 15-CV-7908-JHR-KMW, 2021 WL 3486894 (D.N.J. Aug. 9, 2021). Plaintiffs argue the *Portillo* opinion is indistinguishable, ECF 29, PageID 559-61, but they are wrong.

In *Portillo*, this Court considered owner-operators who, like Mr. Kolev, first signed IC Agreements with New Jersey forum selection clauses and later signed IC Agreements with Texas forum selection clauses. But the Court considered this issue within the context of whether the owner-operators in *Portillo* fell within the Court's class definition. *Id.* at *3-6. In holding they did, it relied on its authority under Fed. R. Civ. P. 23(d), which gives courts broad discretion to enter orders governing class actions. *Id.* The Court found NFI's changing forum selection clauses for putative class members in the midst of class litigation threatened the fairness of *Portillo*,

2

"even if this was not NFI's intention." *Id.* at *6. As a result, the Court "refused to enforce the contract provisions that would exclude the putative class members from the class." *Id.*

Here, Mr. Kolev was in no way involved in litigation with NFI (directly, or as a putative class member) when he and NFI agreed to litigate in Texas "any claim or dispute . . . with respect to the overall relationship" between them. ECF 23-5, PageID 281. Thus, neither Rule 23 nor the Court's broad class action authority warrants refusing to enforce Mr. Kolev's forum selection clause.

As a fallback, Plaintiffs challenge the scope of Mr. Kolev's forum selection clause, arguing it only applies prospectively to disputes that accrued after he and NFI signed the 2020 IC Agreement. ECF 29, PageID 559. "The question of the scope of a forum selection clause is one of contract interpretation," *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997). The plain language of Mr. Kolev's forum selection clause precludes Plaintiffs' interpretation.

The forum selection clause states the parties agree "THAT ANY CLAIM OR DISPUTE ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT ***OR OTHERWISE WITH RESPECT TO THE OVERALL RELATIONSHIP OF THE PARTIES*** . . . SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS IN DALLAS COUNTY, TEXAS." ECF 23-5, PageID 281 (emphasis added). By its terms, it encompasses disputes that accrued both before

3

and after the parties signed the 2020 IC Agreement—because it covers all disputes between the parties generally, not just disputes arising out of the Agreement.[2] *Cf. Allen v. Careers USA, Inc.*, No. CV 20-2357, 2021 WL 2577043, at *3 (E.D. Pa. June 23, 2021) (holding forum selection clause governing "[a]ny proceeding arising between the parties in any manner" governed all claims between the parties); *see also Collins v. Mary Kay, Inc.*, 874 F.3d 176, 185 (3d Cir. 2017) (holding under Texas law, which interprets forum selection clauses broadly, clause covering disputes <u>related</u> to particular agreement encompassed even plaintiff's wage claim).

Plaintiffs' final argument against enforcement of Mr. Kolev's forum selection clause is the Court should disregard it because the selected forum, Texas, allegedly has no relationship to this case.[3] ECF 29, PageID 565-66 (citing *Mind-Peace, Inc. v. Pharmacon Int'l Inc.*, No. 2:06CV632, 2006 WL 2849811, at *3 (S.D. Ohio Oct. 2,

---

[2] By contrast, the forum selection clauses in the cases Plaintiffs cite cover only those disputes arising out of the contracts that contain the forum selection clauses themselves. *See Choice Sec. Sys., Inc. v. AT&T Corp.*, 141 F.3d 1149 (1st Cir. 1998) (holding arbitration provision applied to claims arising out of "products furnished pursuant to" particular agreement); *Trico Elec. Coop., Inc. v. Sensus USA, Inc.*, No. CV 11-182 TUC-DCB, 2011 WL 13233552, at *2 (D. Ariz. Nov. 8, 2011) (finding arbitration provision covered claims arising out of particular agreement); *W.H. Breshears, Inc. v. Del. N. Cos. Parks & Resorts at Yosemite, Inc.*, No. 1:16-CV-1129 AWI SAB, 2016 WL 7010501, at *1 (E.D. Cal. Nov. 30, 2016) (holding forum selection clause applied to any action brought under specific agreement).

[3] In fact, Defendants have substantial connections to Texas. *See* Case No. 1:15-cv-07908-JHR-KMW, ECF 233-5, PageID 6443-44, Decl. of Michael Hayden.

2006) and *D/H Oil & Gas Co. v. Com. & Indus. Ins. Co.*, No. 3:04-CV-448-RV/MD, 2005 WL 1153332, at *4 (N.D. Fla. May 9, 2005)). The cases on which Plaintiffs rely, however, were decided pre-*Atlantic Marine*; thus, they improperly considered private interest factors (*e.g.*, which venue would be most convenient for the parties and witnesses). *See Mind-Peace*, 2006 WL 2849811, at *3; *D/H Oil & Gas*, 2005 WL 1153332, at *4.

In *Atlantic Marine*, the Supreme Court made clear that private interest factors have no place in a court's 1404(a) analysis if—as is the case here—there is a forum selection clause. 571 U.S. at 64. As a result, per binding Supreme Court precedent, Plaintiffs' arguments about the location of the parties, witnesses, and evidence have no place in this Court's analysis. *See, e.g.*, *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 406 (3d Cir. 2017) (finding district court erred where forum selection clause applied and court considered "the parties' and witnesses' convenience, which are not public interests, but private ones").

Instead, this Court may consider only public interest factors, such as the administrative difficulties flowing from court congestion; local interest in having local controversies decided at home; and the benefit of having a case decided in a forum at home with the applicable law. *Atl. Marine*, 571 U.S. at 63. These factors warrant dismissal or transfer to Texas:

5

1.      **Court Congestion:** The District of New Jersey is more congested and overtaxed than the Northern District of Texas. New Jersey had more than four times as many pending civil cases than the Northern District of Texas as of June 2021 (60,624 in New Jersey, as compared to 12,518 in Texas). *See* Request for Judicial Notice filed herewith. Although transferring Mr. Kolev's claims may not dispose of the entire case, it would alleviate the Court of the unique work of interpreting an agreement with Texas forum selection and choice of law provisions.[4]

2.      **Local Interest:** New Jersey has no local interest in the *Kolev* litigation, as Plaintiffs all provided equipment and services to NFI in Illinois and assert their primary claims under Illinois law.

3.      **Forum Familiar with Applicable Law:** New Jersey and Texas courts will be just as familiar with Illinois law. Plaintiffs argue this Court is more

---

[4] Plaintiffs argue it would be inefficient to litigate some of Plaintiffs' claims in this Court and others (some or all of Mr. Kolev's claims) in Texas. ECF 29, PageID 563, 565. The answer is: Plaintiffs can move to consolidate all of their claims in Texas and/or to use appropriate procedural mechanisms to streamline multi-district litigation. *See In re: Howmedica Osteonics Corp*, 867 F.3d 390, 409–10 (3d Cir. 2017) (rejecting argument court should not transfer part of case pursuant to applicable venue selection clause because of risk of "duplicative litigation"). Relatedly, Plaintiffs imply this Court has some sort of expertise in *Kolev* because the Court is overseeing other litigation against NFI, *Portillo*. But *Portillo* involves New Jersey wage claims brought by owner-operators who made deliveries to stores on the East Coast. *Kolev*, by contrast, principally involves Illinois wage claims brought by owner-operators who made deliveries exclusively in Illinois. The Northern District of Texas is just as capable as this Court to oversee the *Kolev* litigation.

familiar because Illinois and New Jersey both use an "ABC test" in determining whether plaintiffs are employees or independent contractors. ECF 29, PageID 564. Even if true, this is not enough to overcome Plaintiffs' heavy burden of proving the Court should ignore Mr. Kolev's forum selection clause where the first factor favors Texas and the second factor is neutral. *See, e.g.*, *Selective Way Ins. Co. v. Glasstech, Inc.*, 191 F. Supp. 3d 350, 362 (D.N.J. 2016) (enforcing forum selection clause, finding public interest factors neutral overall and recognizing default rule that forum selection clause controls).

In sum, Plaintiffs fail to carry their heavy burden of showing this is the "unusual" case in which the Court should disregard a valid forum selection clause. *Cf. Atl. Marine*, 571 U.S. 49, 67 (discussing burden and analysis). As a result, this Court must dismiss Mr. Kolev's claims, or transfer them to Texas.

## B. <u>NATIONAL FREIGHT, INC. IS NOT A JOINT EMPLOYER.</u>

Defendants also moved to dismiss Defendant National Freight, Inc. from this case, noting the only IC Agreement to which it is a party is the 2014 IC Agreement with Plaintiff Kolev. ECF 22-2, PageID 129.[5] Plaintiffs argue their allegations that (1) "Defendants are the same business, operating out of the same principal place of

---

[5] Plaintiffs wrongly accuse Defendants of claiming National Freight, Inc. is not a party to any agreement. ECF 29, PageID 537.

business;" (2) "Defendants are operated by the same individuals and have common ownership;" and (3) Plaintiffs performed work for and contracted with both Defendants, are enough to plead National Freight, Inc. is a joint employer. ECF 29, PageID 536. Case law proves Plaintiffs wrong. *See Carroll v. Sunrise Detox Cherry Hill, LLC*, No. CV 19-17287, 2020 WL 4218409, at *6 (D.N.J. July 22, 2020) (Rodriguez, J.) (holding similar allegations failed to plead joint employer status for purposes of New Jersey wage claim); *Wang v. Saker Shoprites, Inc.*, No. CV162443MASTJB, 2017 WL 380911, at *4 (D.N.J. Jan. 26, 2017) (holding same, finding "boilerplate and conclusory allegations" like Plaintiffs' insufficient).[6]

## III.   THE TIL REGULATIONS PREEMPT STATE LAW BY PRESERVING THE RIGHT TO CONTRACT.

Besides moving to dismiss Plaintiff Kolev and Defendant National Freight, Defendants also moved to dismiss Counts I, III and V on grounds that federal TIL Regulations preempt them. Plaintiffs encourage the Court to blindly follow cases from outside this Circuit declining to find preemption. ECF 29, PageID 539-41. But just like Plaintiffs' Opposition, those cases fail to address adequately the text and history of the TIL Regulations.

---

[6] Notably, the Court has no basis for looking to NFI's website to infer joint employer status, as Plaintiffs advocate it should. *Cf.* ECF 29, PageID 538. *See, e.g.*, *Bolden v. Nat'l Fin. Servs. LLC*, No. 04-5527 (WHW), 2005 WL 8175134, at *6 (D.N.J. May 23, 2005) (agreeing with defendants that "plaintiffs cannot rely on new facts not alleged in their Complaint to defeat a motion to dismiss").

As a starting point, federal law, *i.e.*, TIL Regulations, preempt state law to the extent federal law permits what state law prohibits. *See, e.g.*, *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 479-80 (2013) (explaining federal law prevails over conflicting state law); *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 688 (3d Cir. 2016) (stating federal law prevails where state law thwarts "the full purposes and objectives of a federal law").[7] Here, the regulatory history shows the TIL Regulations permit carriers like NFI to contractually allocate certain business-related expenses to owner-operators. But this is precisely what Plaintiffs argue the NJWPCL and IWPCL prohibit. *See* Counts I, III, and V, Compl. ¶¶ 43-45, 49-50, 55-59. Due to such conflict, the TIL Regulations prevail as a matter of law.

Plaintiffs insist otherwise, arguing the TIL Regulations merely create disclosure requirements. ECF 29, PageID 541 n.6., 544. But the TIL Regulations create disclosure requirements <u>to preserve owner-operators' and carriers' private right to contract</u>. *See* Lease and Interchange of Vehicles, 131 M.C.C. 141, 142 (Jan. 9, 1979) (balancing "full disclosure between the carrier and the owner-operator" with "promot[ing] the stability and economic welfare" of owner-operators). As the TIL regulatory history shows, the TIL Regulations exist to eliminate the need for

---

[7] Contrary to what Plaintiffs insinuate, "[f]ederal regulations have no less pre-emptive effect than federal statutes." *Dzielak v. Whirlpool Corp.*, 120 F. Supp. 3d 409, 415 (D.N.J. 2015) (citing *Fid. Fed. Sav. And Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)).

minimum standards that would prohibit carriers and owner-operators from allocating business expenses as they see fit. *See id.* at 144; *see also* Lease and Interchange of Vehicles, 129 M.C.C. 700, 708,  717, 723, 729 (June 13, 1978).

Rather than address the pertinent regulatory history, Plaintiffs cherry-pick a section of the TIL Regulations stating the Regulations are not "intended to affect" independent contractor status. 49 C.F.R. § 376.12(c)(4). Plaintiffs argue this shows the Regulations do not preempt state law. In actuality, this section reflects concerns that courts and other regulatory agencies would construe compliance with the Regulations as indicative of employee status (because the Regulations certainly require some control over owner-operators), and its history shows the regulations preempt the state statutes as Plaintiffs interpret them. *See* Lease and Interchange of Vehicles, 139 M.C.C. at 716.[8] In short, Section (c)(4) does not limit the Regulations' preemptive effect on state law.

---

[8] The regulatory history discusses how carriers "contend[ed] that if [they are] required to exert more control over the lessor's operations, the status of the owner-operator as independent contractor[s] will be jeopardized" and could "cause additional problems between owner-operators and the National Labor Relations Board . . . and the IRS." *See* Lease and Interchange of Vehicles, 139 M.C.C. at 716. In part for these reasons, the Commission concluded, "the allocation of fuel costs should be left to negotiations between the parties." *Id*; *see also* Lease and Interchange of Vehicles, 131 M.C.C. at 142 (rejecting "specific standards" because they "may tend to interfere with the independent status of the owner-operator and with the parties' rights to contract").

In sum, regulatory history shows TIL Regulations require certain disclosures to preserve owner-operators' and carriers' rights to contract—including to allocate the costs of doing business among themselves. Thus, the TIL Regulations preempt state law to the extent state law purports to destroy parties' private rights to contract, as Plaintiffs claim it does here.

## IV.   THE IC AGREEMENTS REQUIRE DISMISSAL OF COUNT I.

NFI also moved to dismiss Count 1 (Plaintiffs' ILWPCA claim for wrongful deductions) because the documents on which Plaintiffs base their Complaint—IC Agreements—show: (a) Plaintiffs authorized the deductions about which they now complain; and (b) the deductions benefited Plaintiffs. The ILWPCA does not prohibit such deductions, and Plaintiffs notably do not argue otherwise.

Plaintiffs' main argument in response is that the Court should ignore the IC Agreements and rely only on their Complaint's allegations because this case is at the pleading stage. But the Court must disregard pleadings that merely recite the elements of a claim supported by conclusory allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), which is what Plaintiffs' allegations do here:

| Plaintiffs' Allegation | Statute or Regulation |
|---|---|
| Compl. ¶ 38: "NFI did not get Plaintiffs . . . freely given express written consent at the time it made deductions from their wages" | 820 Ill. Comp. Stat. Ann. 115/9: permits deductions "made with the express written consent of the employee, given freely at the time the deduction is made" |
| Compl. ¶ 38: "[T]o the extent Plaintiffs . . . allegedly provided | Ill. Admin. Code tit. 56, § 300.720: "When a deduction is to continue over a |

| | |
|---|---|
| advance ongoing consent to such deductions," NFI did not "advise them that they could revoke their consent at any time."<br><br>Compl. ¶ 39: "The deductions taken by NFI were not for a uniform amount, but rather varied with each paycheck." | period of time and the written agreement provides for that period of time, provides for the same amount of deduction each period and allows for voluntary withdrawal for the deduction, the agreement shall be considered to be given freely at the time the deduction is made. |

Moreover, it is well settled that plaintiffs cannot defeat a motion to dismiss by declining to attach documents: (a) on which they base their complaint; and (b) that defeat said complaint. *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them"); *Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 714 (D.N.J. 2012) (explaining courts consider documents integral to or explicitly relied on in complaint to "avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document"). The Court can and should look to the IC Agreements here, which defeat Plaintiffs' ILWPCA claim for wrongful deductions.

Accepting the Court may well consider the IC Agreements, Plaintiffs argue their terms do not defeat Plaintiffs' claim because those terms do not satisfy the criteria of Ill. Admin. Code tit. 56, § 300.720, "Written Agreement Authorizing Deductions." ECF 29, PageID 548-49, 552-53. Like the *Diakon* opinion on which

they rely, Plaintiffs misunderstand this ILWPCA regulation. The regulation is permissive, not restrictive (let alone exclusive). It states only "what does constitute, in certain circumstances, authorization under the IWPCA; it does not purport to completely describe what does not qualify." *Osorio v. The Tile Shop, LLC*, No. 15 C 15, 2015 WL 7688442, at *3 (N.D. Ill. Nov. 27, 2015) (granting judgment on pleadings to defendant on ILWPCA claim for wrongful deductions). In other words, that courts consider a written agreement authorizing deductions to be "given freely" if it authorizes deductions for a set amount over time and can be revoked, does not mean the inverse is true.

The statute permits deductions "made with the express written consent of the employee, given freely at the time the deduction is made," 820 Ill. Comp. Stat. Ann. 115/9—no matter if the amount deducted is for a set amount or the employee can revoke his consent. The upshot is that whether NFI deducted set amounts and/or whether Plaintiffs could withdraw their consent is not dispositive. NFI did deduct set amounts, and Plaintiffs could withdraw their consent, as the IC Agreements prove. So, Plaintiffs' written authorization for the deductions at issue fit within subpart (b) of the ILWPCA regulations, meaning the Court must consider that consent freely given. But even if, as Plaintiffs argue, that is not so, Count I still fails. Plaintiffs freely consented in writing to the deductions at issue when NFI began making the deductions, as the IC Agreements prove.

Finally, written consent aside, NFI argued the deductions are permissible because NFI made them for Plaintiffs' benefit. Plaintiffs argue deductions for work-related expenses are never to an employee's benefit because in 2019, the Illinois legislature amended the IWPCA to require an employer to reimburse work-related expenses. ECF 29, PageID 553-54. The very statute Plaintiffs cite proves them wrong. It states employers are liable only for "expenditures or losses . . . that inure to the primary benefit of the employer," 820 Ill. Comp. Stat. Ann. 115/9.5, suggesting there are work-related expenses that inure to the benefit of employees.

Plaintiffs also argue *Bell v. Bimbo Foods Bakeries Distribution, Inc.*, No. 11 C 03343, 2013 WL 6253450, at *4 (N.D. Ill. Dec. 3, 2013), which supports Defendants' position, was wrongly decided and, in any event, employer deductions for required equipment and/or damaged property must be in writing. ECF 29, PageID 555-57. The flaw in this argument is Plaintiffs' IC Agreements. The Agreements expressly show Plaintiffs did consent in writing to the deductions at issue. Those deductions are thus lawful even under the regulations Plaintiffs cite.

In sum, Plaintiffs cannot escape the fact they agreed, in writing, to the deductions. Such deductions are thus permissible under the plain language of the ILWPCA; the Court should dismiss Count I.

## V. PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL.

Finally, Plaintiffs strain to keep their unjust enrichment claims alive by

arguing they provide a private right of action where none might otherwise exist. ECF 29, PageID 557-58. Plaintiffs argue New Jersey and Illinois law require employers to provide workers' compensation insurance, and there is no private right of action if an employer requires an employee to bear that cost. *Id.* Plaintiffs believe an unjust enrichment claim is thus "the appropriate course." *Id.* at PageID 558.

Under both New Jersey and Illinois law, however, unjust enrichment is an equitable <u>remedy</u>—not an independent cause of action where no cause of action otherwise exists. *See Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 631 (Ill. App. Ct. 2008) (explaining an unjust enrichment claim "is not a separate cause of action that, standing alone, would justify an action for recovery"). In *Mulligan*, there was no private right of action for common law consumer fraud (the theory on which the plaintiff based her claim), so the unjust enrichment claim failed. *Id. See also, e.g.*, *National Amusements v. Turnpike Auth.*, 261 N.J. Super. 468, 478 (N.J. Super. Ct. 1992) ("Unjust enrichment is not an independent theory of liability"). Plaintiffs' arguments in support of their unjust enrichment claims fail here for the same reason.

## VI.    CONCLUSION

For these reasons, and those in Defendants' opening Memorandum, the Court should grant Defendants' Motion and issue an order: (1) dismissing all claims brought by Plaintiff Kolev; (2) dismissing National Freight, Inc. as a party to this action; and (3) dismissing Counts I and III-VI in their entirety.

Dated: December 6, 2021                        **GREENBERG TRAURIG, LLP**

**By:** _s/ Christiana L. Signs_
James N. Boudreau (*pro hac vice* forthcoming)
Christiana L. Signs (099012014)
1717 Arch Street, Suite 400
Philadelphia, PA 19103
Telephone: (215) 988-7833/7868
Facsimile: (215) 988-7801
boudreauj@gtlaw.com
signsc@gtlaw.com

*Attorneys for Defendants National Freight, Inc. and NFI Interactive Logistics, LLC*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Christiana L. Signs, hereby certify that on December 6, 2021 I caused a true and correct copy of the foregoing Reply in Support of Defendants' Motion to Dismiss to be served via this Court's electronic filing system on the following counsel of record:

Zachary Rubin (NJ Bar No. 179052015)
Harold Lichten (*pro hac vice*)
Sarah Shalman-Bergen (*pro hac vice*)
Thomas Fowler (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116

I, Christiana L. Signs, hereby further certify that on December 6, 2021 I caused a true and correct copy of the foregoing Reply in Support of Defendants' Motion to dismiss to be served via electronic mail on the following counsel:

Bradley Manewith (*pro hac vice* pending)
Marc Siegel (*pro hac vice* pending)
James Rogers (*pro hac vice* forthcoming)
SIEGEL & DOLAN, LTD.
150 N. Wacker Dr., Ste. 3000
Chicago, IL 60601
bmanewith@msiegellaw.com
msiegel@msiegellaw.com
jrogers@msiegellaw.com

*s/ Christiana L. Signs*
Christiana L. Signs