## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

STOYAN KOLEV, JOHNNIE PARKS,           :
PETER DOBRZYNIECKI, LUDWIK DRUDZ       :
CASEY JONES, JESUS RUIZ, and ARNULFO   :
VIEJO, individually and on behalf of all others :     Hon. Joseph H. Rodriguez
similarly situated,                    :
                                       :
                                       :
        *Plaintiffs*,                  :     Civil No. 21-cv-15107
                                       :
    v.                                 :
                                       :
NATIONAL FREIGHT, INC. and NFI         :
INTERACTIVE LOGISTICS, LLC,            :     **OPINION**
                                       :
                                       :
        *Defendants*.                  :

This matter comes before the Court on defendants' motion to dismiss plaintiffs' class action complaint. [Dkt. 22]. The Court is in receipt of plaintiffs' opposition [Dkt. 29] as well as defendants' reply [Dkt. 31]. For the reasons set forth herein, the motion will be granted in part and denied in part.

### I.    Background

Defendants National Freight, Inc. and NFI Interactive Logistics, LLC (hereinafter "NFI") are related third-party providers of logistics, transportation, and delivery services. Plaintiffs Stoyan Kolev, Johnnie Parks, Casey Jones, Jesus Ruiz, and Arnulfo Viejo (collectively, "Plaintiffs") are truck drivers who contracted with NFI to provide transportation-related services and equipment using equipment they owned and leased to NFI.

1

NFI engages independent contractor delivery drivers under Independent Contractor Operating Agreements ("ICOAs"). All named Plaintiffs and putative absent class members executed ICOAs with NFI that nominally classify drivers as independent contractors rather than employees. Plaintiffs allege that NFI misclassified them as independent contractors instead of employees, thus entitling Plaintiffs to compensation for improper deductions from wages and unpaid wages under the Illinois Wage Payment and Collection Act (820 ILCS 115/9.5) ("ILWPCA") or alternatively under the New Jersey Wage Payment Law (N.J. Stat § 34:11-4.2 and § 34:11-4.4) ("NJWPA"), as well as for unjust enrichment.

Specifically, Plaintiffs allege that NFI violated the ILWPCA by: subjecting them to unlawful deductions (Count I); failing to pay them "the agreed upon percentage for each load delivered" (Count II); and failing to reimburse Plaintiffs Kolev and Jones for "necessary business expenses, including but not limited to the cost of fuel, tolls, various insurances, registration fees, and other costs, since January 1, 2019" (Count III). Compl. ¶¶ 43-51 [Dkt. 1]. In the alternative to their statutory ILWPCA claims, Plaintiffs assert a common law unjust enrichment claim under Illinois Law (Count IV). Compl. ¶¶ 52-54. Plaintiffs also assert alternative claims arising under New Jersey law. Plaintiffs allege that NFI violated NJWPL by subjecting them to unlawful deductions and failing to pay them for all miles driven and time worked (Count V). Compl. ¶¶ 55-59. Alternatively, Plaintiffs assert an unjust enrichment claim under New Jersey law (Count VI). Compl. ¶¶ 60-62.

NFI now moves to dismiss the Complaint on the asserted grounds that: (1) Plaintiff Kolev's claims may only be adjudicated in Texas based on a forum selection clause contained in his ICOA; (2) Plaintiffs have not pleaded an employee-employer

relationship with defendant National Freight, Inc.; (3) Plaintiffs' claim for wrongful

deductions in violation of the ILWPCA (Count I) fails because the deductions were

authorized under the statute; and (4) Plaintiffs' unjust enrichment claims (Count IV and

Count VI) fail because Plaintiffs plead a valid contract.

## II.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint, in

whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.

The moving party bears the burden of showing that no claim has been stated. *Hedges v.*

*United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under

Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in

the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct.

2197, 45 L.Ed.2d 343 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts*

*Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's

obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929

(2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief

above a speculative level, such that it is "plausible on its face." *See id.* at 570, 127 S.Ct.

1955; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A

claim has "facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)

3

(citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

## III.   Discussion

### a.   Plaintiff Kolev's Forum Selection Clause

Plaintiff Kolev worked for NFI from 2009 to 2021. Compl. ¶ 7. During that period, Kolev signed ICOAs containing New Jersey forum selection clauses – one dated April 22, 2014 [Dkt. 23-2] and another dated February 27, 2017 [Dkt. 23-3]. Opp. at *33-34. NFI does not dispute that Kolev singed ICOAs containing New Jersey forum-selection clauses. Nevertheless, NFI argues that Kolev is not a proper party to this case based on a subsequent ICOA executed in 2020 that featured a forum-selection clause stating that any claim or dispute arising in connection with the ICOA or otherwise with respect to the overall relationship of the parties shall be brought exclusively in the state or federal courts in Dallas County, Texas. *See* Mot. at *3. NFI contends that because the 2020 ICOA supersedes previous forum designations and covers the instant dispute, the forum-selection clause therein requiring Kolev to bring his claims in Texas controls.

In opposition, Plaintiffs submit that the Court already rejected NFI's position in Portillo. *See Portillo v. Nat'l Freight, Inc.*, No. 15-CV-7908, 2021 WL 3486894 (D.N.J. Aug. 9, 2021). There, defendant NFI argued that drivers with ICOAs containing Texas forum-selection clauses should be precluded from litigating their claims in the District of New Jersey even if they signed prior New Jersey ICOAs because, in NFI's view, the Texas forum-selection clause superseded all previous forum designations. This Court declined to adopt NFI's position that the Texas ICOAs extinguished those plaintiffs' rights to join the class, finding that:

4

> "the run-of-the-mill integration clause" in the Texas ICOA was "designed to do nothing more than prevent any unincorporated side agreements previously negotiated by the parties during the pre-contract negotiation stage from becoming enforceable provisions" in the Texas ICOAs. *Choice Sec. Sys., Inc. v. AT&T Corp.*, 141 F.3d 1149 (1st Cir. 1998). The integration clause does not function as a "radical . . . retroactive renegotiation of . . . earlier agreements" between NFI and its drivers. *Id.* (citing *Kentucky Fried Chicken Corp. v. Collectramatic, Inc.*, 130 N.H. 680, 547 A.2d 245, 248 (N.H. 1988)); *see also Flahavin*, 2012 WL 13026639, at *3–4 (enforcing a forum selection clause in an earlier agreement after finding that forum selection and integration clauses in a subsequent contract did not extinguish rights under the earlier agreement).

> Adopting NFI's view would transform the Texas ICOAs into "implied releases" or waivers of any rights that putative class members may have accrued while performing under contracts governed by New Jersey law. *Trico Elec. Coop., Inc. v. Sensus USA, Inc.*, 2011 WL 13233552, at *4 (D. Ariz. Nov. 8, 2011) (citing *Standard Oil Co. Of California v. Perkins*, 347 F.2d 379, 384 (9th Cir. 1965).

*Portillo*, 2021 WL 3486894, at *5.

The Court further concluded that "to the extent there [was] any doubt as to whether the Texas ICOAs can be interpreted to extinguish Plaintiffs' rights under prior contracts or require them to bring their claims in Texas courts, the Court must resolve those doubts against NFI who drafted the 2019 ICOA." *Id.* (citing *Corp. Synergies Grp., LLC v. Andrews*, 775 F. App'x 54, 56 n.1 (3d Cir. 2019)). Finally, the Court found that even if the Texas ICOAs would extinguish putative class members' rights under New Jersey law or defeat class membership, this would not be appropriate basis for denying certification. Because the Texas ICOAs would "affect participation in the lawsuit" and thereby "threaten the fairness of the litigation[,]" the Court had authority to take the "'minimum steps necessary to correct the effects of the improper conduct' and to interpret the Class Definition in a manner consistent with this authority. *Id.* at *5-6 (quoting *Doe 1 v. Swift Transportation Co.*, No. 2:10-CV-00899, 2017 WL 735376, at *1–2 (D. Ariz. Feb. 24, 2017) and *Becker v. Bank of New York Mellon Tr. Co., N.A.*, No.

2:11-CV-6460, 2012 WL 13018242, at *2 (E.D. Pa. Dec. 18, 2012). Accordingly, the Court held that Rule 23 permitted the Court to decline to enforce the Texas choice-of-law and forum-selection clauses in a manner that would exclude drivers who signed a New Jersey ICOA and a Texas ICOA from the class or extinguish their right to sue under the New Jersey ICOA for conduct that occurred before they signed a Texas ICOA. *Id.* at *6.

In reply, NFI argues that the present circumstances are distinguishable from *Portillo* because there the issue was considered in the context of whether drivers fell within the Court's class definition. The Court disagrees with NFI's conclusion, however, that the posture of the motion at bar somehow abrogates the concerns recognized in *Portillo*. It is equally relevant here that the integration clause contained in the Texas ICOA may not necessarily operate to impliedly release NFI or to waive rights that Kolev may have accrued while performing under contracts governed by New Jersey law. Fundamentally, the Complaint contains sufficient factual allegations that Kolev asserted claims that accrued prior to the execution of his October 27, 2020 Texas ICOA. *See* Compl. ¶ 7. And to the extent that there may be any doubt as to whether the Texas ICOA can be interpreted to extinguish Kolev's rights under prior contracts or require them to bring their claims in Texas courts, at this early stage and without the benefit of discovery the Court must resolve such doubts against NFI who drafted the 2020 ICOA. *See Portillo*, 2021 WL 3486894, at *5 (citing *Synergies Grp., LLC*, 775 F. App'x at 56 n.1 (3d Cir. 2019); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("When considering a Rule 12(b)(6) motion, we are required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."). At bottom, the Court cannot

disregard New Jersey as a possible forum for certain of Kolev's claims, even if NFI sought a waiver through the 2020 Texas ICOA and its integration clause.

NFI's alternative request for the Court to dismiss on forum non conveniens grounds is likewise unavailing. Courts ordinarily conduct a two-step analysis in determining whether to enforce a forum selection clause. *Radware, Inc. v. U.S. TelePacific Corp.*, No. CV1817266, 2019 WL 13202075, at *2 (D.N.J. June 11, 2019). First, a district court examines the validity of the clause. *Id.* Next, a district court must ordinarily weigh an array of private and public-interest factors in order to determine whether a transfer would further "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). As to the private interests, courts specifically consider: (1) plaintiff's forum preference; (2) whether the claim arose elsewhere; (3) the convenience of the parties; (4) the convenience of the witnesses; and (5) the location of books and records. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The public interest factors, in turn, include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative court congestion; (4) the local interest, if any, in deciding local controversies at home; (5) the public policies of the fora; and (6) the relative familiarity of the trial judge with the applicable law. *See id.* at 879–80. The burden of establishing the need for transfer typically rests on the moving party (*Jumara*, 55 F.3d at 879), "and the ultimate decision of whether to transfer a case lies within 'the sound discretion of the trial court.'" *Teva Pharmaceuticals USA, Inc. v. Sandoz Inc.*, No. 17-275, 2017 WL 2269979, at *4 (D.N.J. May 23, 2017) (quoting *Cadapult Graphic Sys. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000)).

7

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause[.]" *Atlantic Marine Coast. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 63 (2013). Where "the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum," the Supreme Court of the United States instructs that the forum selection clause should be "given controlling weight in all but the most exceptional cases." *Id.* (internal quotations omitted). "As a consequence, a district court may consider arguments about public-interest factors only." *Id.* at 64.

NFI urges that because Atlantic Marine permits analysis of only public interest factors (i.e. administrative difficulties, local interest, and the benefit of having a case decided in a forum at home with the applicable law), dismissal is warranted on forum non conveniens grounds because these factors weigh in favor of transfer to Texas. NFI overlooks, however, that the *Atlantic Marine* decision does not address the effect of conflicting, valid forum-selection clauses in separate contracts between the parties. Federal courts are generally hesitant to enforce conflicting forum-selection clauses "out of concern for wasting judicial and party resources." *Samuels v. Medytox Solutions. Inc.*, No. CIV.A. 13-7212 SDW, 2014 WL 4441943, at *4 (D.N.J. Sept. 8, 2014) (citing *Jones v. Custom Truck & Equip., LLC*, No. 10-611, 2011 WL 250997, at *4 (E.D. Va. Jan. 25, 2011)). Since the decision in *Atlantic Marine*, courts have found consideration of the private-interest factors is appropriate where there are competing, mandatory forum-selection clauses. *See, e.g., id.* at *8; *MC Thunderball, LLC v. Dreams Venture, LLC*, No. 2:15-CV-4752, 2016 WL 3567041, at *5 (D.N.J. June 30, 2016) ("in the presence of two competing, pre-selected forums, it is appropriate to weigh the private-interest factors to decide whether transfer is appropriate."). Accordingly, the Court is not persuaded that

8

the Texas forum-selection clause is entitled to dispositive weight where the Complaint alleges causes of action accruing under distinct ICOAs containing conflicting forum selection clauses.

On balance and at this stage, the applicable factors militate in favor of permitting Kolev's claims to be litigated in this Court instead of dismissing or transferring them to Texas. Transferring to Texas would not serve the convenience of parties and witnesses or the interest of justice where (1) National Freight, Inc. and NFI Interactive Logistics, LLC are New Jersey companies operating out of New Jersey and Kolev performed his work for them in Illinois ; (2) the Complaint alleges causes of action arising under Illinois and New Jersey law; (3) Texas does not apply the ABC employment misclassification test utilized in New Jersey and Illinois, which is familiar to this Court; (4) it is not apparent that relevant evidence or witnesses are in Texas; and (5) it would be inefficient for Plaintiff to pursue his pre-October 2020 Illinois claims in one court and his post-October 2020 claims in a Texas court, while other Plaintiffs and putative class members pursue their identical claims in this Court.

### b. Plaintiffs' Relationship with Defendant National Freight, Inc.

NFI asks the Court to dismiss Defendant National Freight, Inc. on the grounds that Plaintiffs have not pleaded an employee-employer relationship. According to NFI, Plaintiffs generally allege that they entered into ICOAs with both Defendants – National Freight, Inc. and NFI Interactive Logistics, LLC – but the ICOAs Plaintiffs reference make no mention of National Freight, Inc. On this basis, NFI contests that National Freight, Inc. is a properly named defendant.

"[T]he precise contours of an employment relationship can only be established by a careful factual inquiry." *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997). "Discovery is often necessary before a plaintiff can reliably define the contours of the employment relationship." *Anderson v. Finley Catering Co.*, 218 F. Supp. 3d 417, 423 (E.D. Pa. 2016). "Therefore, whether a plaintiff is an employee can rarely be resolved on a motion to dismiss." *Contee v. Univ. of Pennsylvania*, No. CV 21-1398, 2021 WL 2661459, at *4 (E.D. Pa. June 29, 2021); *see also Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) ("Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss."). The Third Circuit has stated that the integrated enterprise theory "rests on the degree of operational entanglement – whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another." *Plaso v. IJKG, LLC*, 553 F. App'x 199, 206 (3d Cir. 2014) (quoting *Nesbit v. Gears Unltd., Inc.*, 347 F.3d 72, 87 (3d Cir. 2003)). Factors central to the inquiry include: "(1) the unity of ownership, management, and business functions; (2) whether the entities present themselves as a single entity to third parties; (3) whether the parent company indemnifies the expenses or losses of its subsidiary; and (4) whether one entity does business exclusively with the other." *Id.* (citing *Nesbit*, 347 F.3d at 87); *see also Nat'l Labor Relations Bd. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982) (outlining factors under the single employer doctrine).

Here, the fact that Plaintiffs' written ICOA were executed by NFI Interactive Logistics, LLC does not preclude the possibility that they also maintained an employment relationship with National Freight, Inc. *See Bruger v. Olero, Inc.*, 434 F. Supp. 3d 647, 655 n.9 (N.D. Ill. 2020) (Observing that the existence of an independent

contractor agreement is only a minor factor in determining the nature of a purported employment relationship); *see also Landers-Scelfo*, 827 N.E.2d at 1058–59 (holding that under the IWPCA, "an employment agreement can be entirely implicit" and "employers and employees can manifest their assent to conditions of employment by conduct alone."). Moreover, "a formal agreement between the parties is not required under the IWPCA." *Johnson v. Logistics*, No. 16-CV-06776, 2018 WL 1519157, at *9 (N.D. Ill. Mar. 28, 2018).

Plaintiffs have alleged that Defendants National Freight, Inc. and NFI Interactive Logistics, LLC comprise single enterprise operating out of the same principal place of business in Camden, New Jersey, under the control of the same individuals, and under common ownership. Compl. ¶¶ 4-6. Although these allegations do not specifically demonstrate a "single employer" or "joint employer" relationship among Defendants, the Court finds that Plaintiffs have pleaded sufficient factual matter to survive a motion to dismiss and explore the issue in discovery. If, however, discovery reveals that not to be the case, NFI may re-argue this in a later motion. Until then, Plaintiffs' allegations are sufficient. *See Anderson v. Finley Catering Co.*, 218 F. Supp. 3d 417, 423 (E.D. Pa. 2016) (finding that plaintiff's allegations of common ownership, shared of management and operations, centralized control of labor relations, and common financial controls were sufficient at the motion to dismiss stage to give rise to a reasonable inference that two companies were either joint employers or a single employer); *see also Hartman v. Chestnut Hill College*, Civ. A. No. 00–1400, 2000 WL 1016655, at *1–2 (E.D. Pa. July 7, 2000) (refusing to dismiss claim based on "single employer" or "joint employer" relationship, observing that the allegations "do not specifically bring [one defendant] into a 'single employer' or 'joint employer' role with the other defendants," but

11

concluding that it would be "premature to dismiss the complaint" because the "allegations, when taken in a light most favorable to plaintiff, could lead a reasonable mind to believe that" there was such a relationship.).

### c. Preemption of Deduction and Reimbursement Claims (Counts I, III and V)

NFI argues that Plaintiffs' claims for Unlawful Deductions in Violation of the ILWPCA (Count I), Failure to Reimburse Expenses in Violation of the ILWPCA (Count III), and Violation of the NJWPL (Count V) are preempted by federal Truth in Leasing ("TIL") regulations. Plaintiffs allege that NFI violated the ILWPCA and NJWPL by unlawfully requiring Plaintiffs to pay certain expenses and deducting funds from Plaintiffs' paychecks to cover those expenses. There is no dispute that the ICOAs contemplated these expenses and deductions. NFI argues that TIL regulations authorized NFI to contractually allocate costs to drivers and to deduct costs from the drivers' paychecks. Br. in Supp. at *11-12 (citing 49 C.F.R. §§ 376.12(e), (j)(1), (j)(3), (h))]. NFI therefore contends that TIL regulations preempt the NJWPL and ILWPCA to the extent these statutes would prohibits the subject allocations and deductions.

"The Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, invalidates state law that 'interferes with or is contrary to federal law.'" *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (quoting *Free v. Bland*, 369 U.S. 663, 666, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962)). Federal regulations can preempt state laws in the same manner as federal statutes. *Id.* (citing *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)). Federal law can preempt state law through, *inter alia*, conflict preemption. *Cohen v. Subaru of Am., Inc.*, No.

12

120CV08442, 2022 WL 721307, at *37 (D.N.J. Mar. 10, 2022) (citing *Bruesewitz v. Wyeth Inc.*, 561 F.3d 233, 239–41 (3d Cir. 2009), *aff'd sub nom. Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 131 S.Ct. 1068, 179 L.Ed.2d 1 (2011)). Conflict preemption arises where it is "impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270 (1990) (citations and quotations omitted).

Here, conflict preemption does not apply because the ILWPCA and the NJWPL do not make compliance with TIL regulations impossible or frustrate Congress's objectives in passing TIL regulations. Plaintiffs allege that NFI made deductions for various insurances, related insurance claims, and mandated GPS systems, among other expenses. Plaintiffs further allege that NFI failed to reimburse Plaintiffs' necessary business expenses, such as the cost of maintenance, fuel, the cost of various insurances and related claims, tolls registration fees, and other costs. In its motion to dismiss, NFI submits that Plaintiffs' claims related to the deductions and reimbursements are preempted by 49 C.F.R. §§ 376.12(e), (j)(1), (j)(3), and (h), which NFI contends allow carriers and contractors to enter into agreements providing for such arrangements and for the provision of certain types of deductions that Plaintiffs claim are unlawful. While the TIL regulations certainly contemplate the possibility that a carrier like NFI might contractually allocate certain business-related expenses to owner-operators, they do not indicate that certain agreements and deductions are always valid. *See Portillo v. Nat'l Freight, Inc.*, 606 F. Supp. 3d 72, 100 (D.N.J. 2022) ("The aim of the [TIL] regulations is to compel disclosure of the contract terms between the owner-operators and the carriers, not to govern the terms for which the parties are permitted to bargain."

13

(internal citation and quotations omitted). Rather, the regulations only require that many pertinent terms be set forth in writing in a lease. For example, § 376.12(e) considers that a driver-carrier might agree to split the costs of "fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portion of such items" in various ways, but requires that the lease "clearly specify the responsibility of each party with respect to [such] cost[s]." 49 C.F.R. § 376.12(e). Likewise, the section addressing insurance provides that: "If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor." 49 C.F.R. § 376.12(j)(1) (emphasis added). Accordingly, there is no apparent reason why an employer could not violate the ILWPCA and the NJWPL by improperly withholding funds from an employee, and simultaneously comply with TIL regulations by disclosing the basis for the withholding in a contract. The TIL regulations therefore do not operate to preempt the ILWPA or the NJWPL.

### d. Authorization of Deductions

NFI argues that Plaintiffs' ILWPCA claim for unlawful deductions (Count I) should be dismissed because the deductions at issue were authorized. In the Complaint, Plaintiffs allege that NFI impermissibly required Plaintiffs to be subject to deductions for: (1) workers' compensation insurance; (2) liability insurance; (3) other job-related insurance; (4) escrow accounts maintained by NFI on Plaintiffs' behalf; (5) GPS tracking equipment NFI required Plaintiffs to purchase; and (6) deductions for damages or problems with deliveries. Compl. ¶¶ 28-29, 37-38, 44. The ILWPCA generally prohibits deductions unless, *inter alia*, the deductions are "to the benefit of the employee" or

14

"made with the express written consent of the employee, given freely at the time the deduction is made." 820 ILCS § 115/9. NFI contends that Plaintiffs' ICOAs prove the deductions Plaintiffs now challenge fall under both categories and were therefore authorized.

### i. Deductions Made for Plaintiffs' Benefit

NFI argues that because Plaintiffs had the option to purchase insurance and GPS equipment through NFI or elsewhere, these offerings were for Plaintiffs' convenience and benefit. NFI further contends that deductions for the escrow accounts NFI maintained for damages or problems with deliveries benefitted Plaintiffs because these accounts covered expenses that were Plaintiffs' responsibilities under their Agreements if such expenses exceeded NFI's payments to Plaintiffs. According to NFI, these deductions would save Plaintiffs from having to pay NFI out-of-pocket for such expenses. NFI therefore submits that any deductions NFI took to cover these expenses were for Plaintiffs' benefit and permitted under the ILWPCA.

The parties' respective positions and the cases cited in support thereof diverge on whether such deductions are to the benefit of employees as the term is understood under the IWPCA. NFI relies primarily on *Bell v. Bimbo Foods Bakeries* in which the court sitting in the Northern District of Illinois concluded that deductions made for required equipment and settlement accounts benefitted plaintiff "because they were convenient[.]" *Bell v. Bimbo Foods Bakeries*, 2013 WL 62530, at *4 (N.D. Ill. Dec. 3, 2013). On the other hand, Plaintiffs ask the Court to follow the more recent decision in *Torres v. Nation One Landscaping, Inc.* where the same court rejected that administrative convenience alone sufficed to establish that deductions were made to the

15

benefit of employees. *Torres v. Nation One Landscaping, Inc.*, No. 12 CV 9723, 2016 WL 7049048, at *5 (N.D. Ill. Dec. 5, 2016) (concluding a reasonable jury could not find that the benefit exception applied where there was no evidence that employer "subsidized the cost of the [uniform] rentals or . . . received a discounted rate for the group, which it shared with the employees").[1]

At this stage, the Court is unable to find that these deductions were to Plaintiffs' benefit. Considering the ILWPCA's requirement that employers reimburse employees for work-related expenses that inure to the primary benefit of employers, the nature of the expenses at issue, and the absence of facts to suggest that NFI provided any subsidy or discount, the Court is satisfied that Plaintiffs have alleged sufficient facts to plausibly show that the deductions Plaintiffs challenge fall outside the benefit exception of 820 ILCS § 115/9. Unlike in *Kim v. Citigroup, Inc.* where employers' deductions made to facilitate a stock purchase program were a genuine benefit to employees, it is not obvious that deductions made for required GPS equipment, escrow accounts, and insurance are equally authorized under the benefit exception. *See Kim v. Citigroup, Inc.*, 856 N.E.2d 639, 646-47 (Ill. Ct. App. 2006). Regulations promulgated by the Illinois Department of Labor lend support to the understanding that deductions made for required equipment (56 Ill. Adm. Code 300.850)[2] and to cover expenses arising from

---

[1] Both decisions were reached in the context of summary judgment.

[2] "An employer shall not deduct the cost of equipment required by the employer or by law from an employee's wages or final compensation unless the employee's express written consent is given freely at the time the deduction is made." Ill. Admin. Code, 56, § 300.850.

damaged property (56 Ill. Adm. Code 300.730)[3] are not benefits to employees. These regulations authorize such deductions where express written consent is given freely while making no provision for deductions made for the benefit of employees. The Illinois Department of Labor's exclusion of a "benefit exception" therefore weighs against the view that these deductions should be regarded as inuring to the benefit of the employee rather than the employer. Likewise, it is not apparent that shifting costs that employers are required to assume under Illinois law such as workers' compensation insurance would constitute a benefit to employees. *See* 820 Ill. Comp. Stat. Ann. 305/1 (providing that the employer is responsible for the cost of workers' compensation benefits); *Groark v. Thorleif Larsen & Son, Inc.*, 231 Ill. App. 3d 61, 65 (1992) ("Illinois has a strong public policy to insure the protection of workers covered by the Workers' Compensation Act."). Though certain provisions made by NFI perhaps conferred an administrative convenience to Plaintiffs, without further evidence this alone does not suffice to establish that the related deductions were made to Plaintiffs' benefit. *See Torres*, 2016 WL 7049048, at *5.

## ii. Deductions Made with Plaintiffs' Consent

As discussed, the ILWPCA does not prohibit deductions "made with the express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9(4). NFI argues that the challenged deductions are authorized because Plaintiffs freely consented to them in their ICOAs. But Plaintiffs allege in their

---

[3] "An employer shall not deduct from an employee's pay or otherwise demand reimbursement from an employee for cash and/or inventory shortages unless the employee's express written consent is given freely at the time the deduction or demand for reimbursement is made." Ill. Admin. Code, 56 § 300.730.

complaint that (1) Plaintiffs did not freely give express written consent at the time the deductions were made from their wages; (2) Plaintiffs were never advised, nor could they revoke their consent to such deductions at any time; and (3) often deductions were made in amounts that varied from pay period to pay period, which Plaintiffs could not have preauthorized since the amounts were unknown until made without their consent. Compl. ¶¶ 37-40.

To shed light on what is permitted under the exception, both Plaintiffs and NFI refer to the Illinois Administrative Code implementing the ILWPCA. NFI contends that the deductions Plaintiffs challenge, save for the escrow deductions, are deductions to re-pay cash advances permitted under 56 Ill. Admin. Code tit. § 300.720(a), which provides that:

> Any written agreement between employer and claimant permitting or authorizing deductions from wages or final compensation must be given freely at the time the deduction is made. In the case of cash advances, the agreement may be made either at the time of the deduction or at the time of the advance itself.

56 Ill. Admin. Code, § 300.720(a).

A separate provision within the regulation states that "[i]f a cash advance is to be repaid through payroll deductions, both the employer and the employee must sign an agreement specifying the amount of the advance, the repayment schedule, and the method of repayment." 56 Ill. Admin. Code, § 300.750. For deductions to be authorized pursuant to such an agreement, the amounts of deductions must be for known amounts and deducted in the same amount each deduction period and must allow for voluntary withdrawal of consent for the deduction. *See* 56 Ill. Admin. Code § 300.720(b). In short, the ILWPCA regulations clarify that express consent to a deduction is considered freely given if four requirements are met: (1) the deduction is to continue over a period of

18

time; (2) a written agreement states that period; (3) the agreement provides for the same amount of deduction each period; and (4) the agreement allows for the voluntary withdrawal of consent for the deduction.

Interpreting the ILWPCA and appurtenant regulations, in *Johnson v. Diakon Logistics* (hereinafter "*Diakon*"). the District Court sitting in the Northern District of Illinois observed the distinction made between the deductions of known amounts and the deduction of unknown amounts. *See Johnson v. Logistics*, No. 16-CV-06776, 2018 WL 1519157, at *8 (N.D. Ill. Mar. 28, 2018). The *Diakon* court declined to find that deductions were authorized where plaintiffs alleged that the deductions taken by their employer "were not for a uniform amount, but rather varied with each paycheck." *Id.* (internal quotations and citations omitted). In reaching this conclusion, the *Diakon* court differentiated the facts in its case from *Osorio v. Tile Shop, LLC* on the basis that the deductions in *Osorio* were authorized because the plaintiff in that case "knew exactly how much of each paycheck he would be required to give up[.]" *Id.* (quoting *Osorio v. Tile Shop, LLC*, No. 15 C 15, 2016 WL 316941, at *1 (N.D. Ill. Jan. 27, 2016)).

Plaintiffs contest NFI's position that the deductions were authorized by pointing to the allegation made in their Complaint that the amounts of NFI's deductions varied each week. Compl. ¶ 39. NFI disputes this allegation, but the Court is not in a position to make the factual determinations necessary to fully resolve the merits of this issue at this stage. NFI contends that it would "advance the cost" for certain expenses and "then later deduct the associated cost . . . from payments to Plaintiff." *Mot.* at *20. As discussed, if a cash advance is to be repaid through payroll deductions, both the employer and the employee must sign an agreement specifying the amount of the advance, the repayment schedule, and the method of repayment." 56 Ill. Admin. Code, § 300.750. Though NFI

19

has pointed to facts that escrow fund deductions were to be made pursuant to a weekly schedule and at a rate of $50 or $75 per weekly settlement (Mot. at *21; Declaration of Christina L. Signs in Support of Defendants' Motion to Dismiss ¶¶ 8-9, 11, 13 [Dkt. 23]), there is no information that the GPS equipment and insurance deductions were similarly accounted for such that it can be determined that Plaintiffs' freely gave express consent.

Plaintiffs also challenge NFI's position that the deductions were authorized on the asserted basis that they could not withdraw their consent for deductions at any time. *See* Opp. at *21; Compl. ¶ 38. On this point, NFI contends that the deductions are valid because Plaintiffs "can voluntarily withdraw their consent for such deductions by terminating their Agreements" Br. in Supp. at *21. However, as Plaintiffs point out, the practical consequence of Plaintiffs' withdrawing by terminating their Agreements would be to quit their jobs. Under these circumstances, it would be premature at the pleading stage to make a determination that Plaintiffs were advised that they could voluntarily withdraw consent as the term is understood under Illinois law, or that they had the ability to do so. Accordingly, dismissal of Plaintiff's ILWPCA claim for unlawful deductions (Count I) is not warranted at this time.

### e.  Unjust Enrichment

NFI argues that because Plaintiffs base their case on contracts they admit are valid, their unjust enrichment claims (Counts IV and VI) fail as a matter of law. Mot. at *23-24. In response, Plaintiffs contend that their unjust enrichment claims are appropriately brought because they are explicitly pleaded in the alternative to the statutory wage claims and asserted such that "if their wage claims could not proceed . . .

NFI could still be liable for foisting the costs of workers' compensation insurance and other insurance costs and expenses on Plaintiffs' backs[.]" Opp. at *31-32.

Under this theory of recovery, Plaintiffs must show that defendants "voluntarily accepted a benefit which would be inequitable for [them] to retain without payment." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill.2d 473, 497 (1992); *see also Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 109 (App. Div. 1966) (a plaintiff must demonstrate that the defendant "received a benefit, and that retention of the benefit without payment therefor would be unjust."). However, where a specific contract governs the relationship between the parties, the doctrine of unjust enrichment is inapplicable. *La Throp v. Bell Federal Savings & Loan Ass'n*, 68 Ill.2d 375, 391 (1977); *see also Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 541 (7th Cir.2008) ("damages for unjust enrichment are not awardable when . . . there is a contract between the parties on the subject in dispute"); *Laney v. Am. Standard Cos., Inc.*, No. CIV.A. 07-3991, 2010 WL 3810637, at *12 (D.N.J. Sept. 23, 2010) ("Unjust enrichment is a quasi-contractual claim that may only be pursued in the absence of a valid express contract.") (internal quotations and citations omitted); *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 311 (3d Cir. 1982) (observing that New Jersey law precludes recovery on a quasi-contract theory where "there is a legally subsisting express agreement, no rescission is sought and no contention that the express contract is void or did not exist."); *Von Nessi v. XM Satellite Radio Holdings, Inc.*, No. CIV.A 07-2820, 2008 WL 4447115, at *4 (D.N.J. Sept. 26, 2008) ("a plaintiff can only pursue a quasi-contractual claim in the absence of a valid express contract.").

Fed. R. Civ. P. 8(d)(2) of the Federal Rules of Civil Procedure allows plaintiffs to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either

in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). "[W]hile a plaintiff may plead claims alternatively based on an express contract and unjust enrichment, the unjust enrichment claim cannot include allegations of an express contract." *See Diakon*, 2018 WL 1519157, at *9 (internal quotations and citation omitted). Here, Plaintiffs' Complaint alleges that each named Plaintiff executed an ICOA with NFI. Compl. ¶¶ 3, 26. Counts IV and VI do not, however, allege in the alternative that any ICOA was invalid, no longer in full force and effect, or otherwise unenforceable. Instead, the unjust enrichment counts incorporate the allegations of the preceding paragraphs, which allege the existence of executed ICOAs. Therefore, the repeated allegations that Plaintiffs executed ICOAs dictating the terms of their relationship with NFI, in the absence any pleadings to the contrary, is fatal to Plaintiffs' claims for unjust enrichment. For this reason, Counts IV and VI will be dismissed without prejudice.

## IV. Conclusion

For the reasons set forth herein, NFI's motion to dismiss will be granted in part and denied in part, as follows:

1. The motion will be granted as to NFI's request to dismiss Counts IV and VI. Counts IV and VI will be dismissed without prejudice.

2. The motion will be denied insofar as it requests dismissal of Plaintiff Kolev's claims for choice of forum and forum non conveniens.

3. The motion will denied with respect to its request for dismissal on the basis that Plaintiffs have not pleaded an employee-employer relationship with defendant National Freight, Inc.

22

4.  The motion will be denied insofar as it requests dismissal of Plaintiffs'

    claim for wrongful deductions in violation of the ILWPCA (Count I).

An accompanying order shall issue.

April 20, 2023

Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE

23