## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **STOYAN KOLEV,** *et al.*,<br><br>　　　**Plaintiffs,**<br><br>　　v.<br><br>**NATIONAL FREIGHT, INC.,** *et al.*,<br><br>　　　**Defendants.** | **Case No. 21–cv–15107–ESK–EAP**<br><br><br>**OPINION** |

**KIEL, U.S.D.J.**

Plaintiffs are truck drivers who seek to represent a class of Illinois drivers allegedly improperly classified by defendants as independent contractors. But wittingly or unwittingly, the class they seek to represent today is more expansive than the one they have presented for much of this five-year-old case. Because I find that the expanded class definition prejudices defendants as described in a prior opinion and plaintiffs have not demonstrated by a preponderance of the evidence that the remaining class members are so numerous as to make joinder impracticable, their motion to certify at ECF No. 108 will be denied without prejudice.

### I.    BACKGROUND

I write for the parties and refer to the record only to the extent necessary to resolve the pending motion. Because my decision turns on notice to defendants and prior decisions, I focus on the procedural history of the case.

Plaintiffs filed this action on behalf of themselves and those similarly situated in an August 10, 2021 complaint. (ECF No. 1 (Compl.).) Plaintiffs alleged that they worked as delivery drivers for defendants National Freight, Inc. and NFI Interactive Logistics, LLC within the state of Illinois and were

improperly classified as independent contractors. (*Id.* p. 1.) Plaintiffs made allegations including that they and class members were required to place the NFI logo on their trucks, assigned to set routes with scheduled departure times, tracked by NFI dispatch through a GPS system required on all trucks, and responsible for maintaining their own insurance. (*Id.* pp. 5–7.)

Plaintiffs asserted six counts. Count 1 and Count 2 alleged unlawful deductions and unpaid wages in violation of the Illinois Wage Payment and Collection Act on behalf of all plaintiffs and class members. (*Id.* p. 12.) Count 3 alleged a failure to reimburse expenses in violation of the Illinois Wage Payment and Collection Act on behalf of plaintiffs Stoyan Kolev and Casey Jones and class members. (*Id.* p. 13.) In the alternative, Count 4 alleged Illinois common law unjust enrichment. (*Id.*) In the further alternatives, Count 5 alleged violation of the New Jersey Wage Payment Law and Count 6 alleged unjust enrichment under New Jersey common law. (*Id.* pp. 13–15.)

Relevant here, plaintiffs sought to represent themselves and "[a]ll individuals who were classified as independent contractors while performing delivery services on behalf of Defendants for Target, Starbucks, or Steinmart stores anywhere in Illinois during the applicable limitations period." (*Id.* p. 10.)

Defendants moved to dismiss. (ECF No. 22.) In an April 20, 2023 opinion, District Judge Joseph H. Rodriguez (Ret.) declined to interpret an operating agreement signed by Kolev with a Texas forum selection clause as releasing or waiving claims that accrued under previously executed agreements with New Jersey forum selection clauses. (ECF No. 44 pp. 4–6.) Nor was dismissal granted on the basis of forum non conveniens. (*Id.* pp. 7–9.) Judge Rodriguez permitted plaintiffs' claims to proceed with the exception of Count 4 and Count 6 alleging unjust enrichment. These counts were dismissed

without prejudice because they were premised on the operating agreements. (*Id.* pp.20–22.)   A corresponding order was entered.   (ECF No. 45.)

Plaintiffs Peter Dobrzyniecki and Ludwik Druzd voluntarily dismissed their claims on September 5, 2023.  (ECF No. 57.)   Plaintiff Jesus Ruiz stipulated to dismissal about a year later.   (ECF No. 100; ECF No. 102.)   Soon after, all remaining plaintiffs stipulated to dismissal of Count 2.   (ECF No. 101; ECF No. 103.)   This leaves plaintiffs Kolev, Jones, Johnnie Parks, and Arnulfo Viejo asserting Count 1, Count 3, and—in the alternative—Count 5.[1]

On January 17, 2024, in the midst of these dismissals, plaintiffs moved to amend the complaint.  (ECF No. 61.)   Plaintiffs were spurred by NFI's position that plaintiffs' class claims were limited to just one of NFI's Illinois warehouses, located in Elwood, Illinois.   (ECF No. 62 p.5.)   Plaintiffs sought to add two plaintiffs who worked in warehouses located in Des Plaines and Ottawa.  (*Id.* pp.5, 6.)   Among the changes proposed in the amended complaint were the assertion of diversity jurisdiction—in addition to jurisdiction pursuant to the previously pleaded Class Action Fairness Act (CAFA)—and removal of the limiting clause in the class definition defining the class as those who performed deliveries on behalf of defendants for Target, Starbucks, or Steinmart.   (ECF No. 62–2 (Mot. Am. Ex. B) pp.6, 12.)

Magistrate Judge Elizabeth A. Pascal denied plaintiffs' motion to amend in an August 19, 2024 opinion and order.   (ECF No. 91 (Aug. 19, 2024 Op.); ECF No. 92.)   Judge Pascal noted that plaintiffs' motion was untimely pursuant to her scheduling order and found that plaintiffs failed to demonstrate good cause excusing the delay.   (Aug. 19, 2024 Op. pp.4–7.)   Judge Pascal

---

[1] A district court ruling on a motion to certify must generally consider any choice-of-law issues.   *See Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 273 n.5 (3d Cir. 2021).   The parties do not take definitive positions on whether Illinois or New Jersey law should apply.   Because this decision does not reach the substance of plaintiffs' claims, I do not resolve the issue on my own.   The parties are directed to include a choice-of-law analysis in any subsequent certification or dispositive motion.

nonetheless evaluated the motion under Federal Rule of Civil Procedure (Rule) 15 and determined that amendment was futile because plaintiffs failed to assert CAFA jurisdiction and the addition of one of the proposed plaintiffs would have destroyed diversity. (*Id.* pp. 9–11.) Prejudice and undue delay were additional factors supporting denial. (*Id.* pp. 11–14.) Specifically, Judge Pascal found that defendants had operated during the entire litigation with the understanding that the putative class was limited to specific retailer customers and amendment would have resulted in additional discovery, costs, and preparation necessary to defend new facts and legal theories. (*Id.* p. 13.)

The pending motion to certify followed, (ECF No. 108), to which defendants filed an opposition (ECF No. 113 (Defs.' Opp'n Br.)) and plaintiffs replied (ECF No. 119 (Pls.' Reply Br.)). On December 12, 2025, this case was reassigned to me. (ECF No. 130.) That same day, I entered a text order noting that the operative complaint only asserted jurisdiction under CAFA and Judge Pascal had concluded that CAFA jurisdiction did not exist. (ECF No. 131.) Plaintiffs were directed to show cause why dismissal was not warranted for lack of subject matter jurisdiction and support diversity jurisdiction if asserted. (*Id.*) NFI was directed to file a diversity disclosure statement. (*Id.*) The motion to certify was administratively terminated pending the jurisdictional inquiry. (ECF No. 140.)

I held a video conference on January 22, 2026 (ECF No. 141), during which plaintiffs conceded that CAFA jurisdiction did not exist and stated that they sought to assert diversity jurisdiction. Plaintiffs were permitted to file an amended complaint asserting diversity jurisdiction. Plaintiffs filed the operative amended complaint (ECF No. 143 (Am. Compl.)),[2] which defendants have answered (ECF No. 147).

---

[2] Consistent with my December 12, 2025 order, NFI has filed a diversity disclosure statement. (ECF No. 137.) Therein, NFI discloses the entities and individuals underlying its layers of membership, resulting in citizenship in Florida,

## II.    MOTIONS FOR CLASS CERTIFICATION

Putative class actions must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).  *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 438 (3d Cir. 2017).  The class must also be maintainable pursuant to Rule 23(b)(1), (2), or (3).  *Id.*  For a Rule 23(b)(3) class, as asserted here, plaintiffs must satisfy the additional requirements of predominance and superiority.  *See id.* at 438–39.

The movant is responsible for proving each of the Rule 23 requirements by a preponderance of the evidence.  *Gonzalez v. Corning*, 885 F.3d 186, 192 (3d Cir. 2018).  Courts within the Third Circuit look beyond the pleadings at the class certification stage to ensure that each Rule 23 prerequisite is met.  *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 338 (D.N.J. 2018).  The court must (1) conduct a rigorous analysis and (2) review all inquiries in which it may have doubts (3) to its satisfaction and (4) make determinations on the Rule 23 requirements or (5) require the plaintiff to demonstrate conformance with Rule 23.  *Id.*

## III.    DISCUSSION

### A.    <u>The Class Definition</u>

Before reaching the Rule 23 prerequisites, it is necessary to discuss plaintiffs' class definition.  Plaintiffs' proposed order seeks to certify a class of "[a]ll individuals who contracted with NFI to provide delivery services in Illinois between August 10, 2011, and the present, who made deliveries for NFI personally full-time and who were classified as independent contractors." (ECF No. 108–1 p.2.)  Plaintiffs state that courts in Illinois have routinely

---

Pennsylvania, and Texas.  (ECF No. 137–1.)  Paired with plaintiffs' citizenship in Illinois and the representation that National Freight is a New Jersey corporation with a principal place of business in New Jersey (Am. Compl. pp.2, 3), I am satisfied that diversity jurisdiction exists between the parties.

granted certification under similar facts as presented here.   (ECF No. 109 (Pls.' Mot. Br.) pp. 11, 12.)   Judge Rodriguez also granted certification in a similar case, *Portillo v. National Freight, Inc.*, 336 F.R.D. 85 (D.N.J. 2020).   (*Id.* p. 9.)[3]

Defendants contend that the class definition is overly broad. (Defs.' Opp'n Br. pp. 19, 20.)   First, the 2019 operating agreement includes a Texas forum selection clause and thus there is no venue for a class member asserting Illinois claims who provided services only in 2019 and beyond.   (*Id.*)   The class is also overboard in terms of location and position, according to defendants, as plaintiffs include both owner-operators and licensed motor carriers[4] across multiple warehouses.   (*Id.* p. 20.)   Judge Pascal rejected a similar effort to expand the class definition in denying plaintiffs' motion to amend.   (*Id.*)

In response, plaintiffs argue that the class definition has not changed since the original complaint and, even if it has, class definitions frequently change at the certification stage. (Pls.' Reply Br. pp. 8, 9)   Judge Pascal's decision merely denied plaintiffs' attempt to add two named plaintiffs and did "not change the fact that the Complaint did not limit the scope of the class to the Elwood warehouse."   (*Id.* p. 9 n. 2.)   Insofar as defendants invoke the Texas forum selection clause, there is no evidence that any class member signed that

---

[3] Plaintiffs reference *Portillo* throughout their moving papers.   These citations are logical, particularly considering that Judge Rodriguez was presiding over this case when plaintiffs filed their motion.   But "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same [district] judge in a different case."   *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 395 (3d Cir. 2017) (alteration in original) (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011)).   I have reviewed *Portillo* before drafting this decision. Though it may have persuasive value in the common defendants and issues raised, I find that there are defects in certification here that were not present in *Portillo*.

[4] Owner-operators and licensed motor carriers differ only in that licensed motor carriers possess their own insurance coverage and Department of Transportation operating authority.   (ECF No. 113–8 (Hayden Dep. Tr.) pp. 17:25–19:3.)

operating agreement[5] and Judge Rodriguez rejected similar arguments in his motion to dismiss opinion.   (*Id.* pp. 10–12.)

To begin, two things may simultaneously be true.   First, a plaintiff is not bound by the class definition proposed in a pleading and may present a revised definition as part of a motion for class certification.   *See Kalow & Springut, LLP v. Commence Corp.*, 272 F.R.D. 397, 401–02 (D.N.J. 2011).   Second, plaintiffs underrepresent the scope of Judge Pascal's motion to amend decision.

Plaintiffs maintain that the class definition has not changed and that the complaint broadly referred to Illinois drivers and multiple warehouses.   (Pls.' Reply Br. pp. 8, 9 (discussing Compl. pp. 1, 4).)   But this representation obscures the fact that the asserted class definition sought—and continues to seek—to represent drivers who delivered "on behalf of Defendants for Target, Starbucks, or Steinmart stores …." (Compl. p. 10; Am. Compl. p. 10.) Plaintiffs sought to remove the "for Target, Starbucks, or Steinmart stores" language in their motion to amend.   (Mot. Am. Ex. B p. 12.)

This limiting clause may seem relatively innocuous, but its inclusion means something specific to the parties.   NFI Senior Vice President Michael Hayden testified to the retailer customers served out of NFI's individual Illinois warehouses. (Hayden Dep. Tr. pp. 27:17–33:21.) Target, Starbucks, and Steinmart were served out of the Elwood warehouse.   (*Id.* p. 32:11–13.)   The inclusion of Target, Starbucks, and Steinmart thus could fairly be read as limiting the class to drivers who serviced the Elwood warehouse.   In turn, exclusion of those customers may be fairly read as expanding the class.

Judge Pascal certainly believed so.   While plaintiffs assure me that the motion to amend decision was limited to the addition of named plaintiffs (Pls.' Reply Br. p. 9 n. 2), Judge Pascal explicitly noted in her decision that plaintiffs

---

[5] Plaintiffs later concede that Kolev signed an operating agreement with a Texas forum selection clause but note that Judge Rodriguez declined to transfer his claim in the motion to dismiss decision.   (Pls.' Reply Br. p. 11 n. 5.)

sought to both add named plaintiffs and amend the class definition to remove Target, Starbucks, and Steinmart.  (Aug. 19, 2024 Op. p.2.)  On the latter point, and as part of her Rule 15 analysis, Judge Pascal concluded that defendants had "been operating for the entirety of this litigation with an understanding that the putative class is limited to specific retailers" and would be prejudiced by plaintiffs' proposed amendments.  (*Id.* p.13.)

Plaintiffs did not seek reconsideration from Judge Pascal or appeal her decision pursuant to Local Civil Rule 72.1(c).  Rather, they move to certify a similarly broadened class that is not limited to specific retailer customers or warehouses.

But district and magistrate judges are not parents to whom litigant children can ask one for permission and, if dissatisfied with the answer, turn to the other as if for the first time.   Federal and local procedural rules delineate a specific division of labor and discretion between magistrate judges and district judges.  Motions to amend in this District are decided by magistrate judges. *Jordan v. Tapper*, 143 F.R.D. 567, 571 (D.N.J. 1992).  More generally, magistrate judges possess broad discretion in docket management and in resolving discovery issues.  *See Gerald Chamales Corp. v. Oki Data Ams., Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007).   If plaintiffs believed that Judge Pascal was incorrect, their recourse was to timely challenge the decision by motion or appeal, not disregard it or read limitations into it not present in its text.

The decision in *McDonald v. Franklin County*, 306 F.R.D. 548 (S.D. Ohio 2015), is persuasive in this respect.   There, the plaintiff sought to represent classes of detainees who were forced to undress upon admittance to the correctional facility and who had photographs taken of tattoos located on intimate parts of their bodies. *McDonald*, 306 F.R.D. at 552–53.  The plaintiff learned during discovery that other female detainees were photographed by male technicians just as she was and sought to add a "cross-

gender photography subclass" via an amended complaint. *Id.* at 553. The magistrate judge denied the motion to amend, the plaintiff did not move for reconsideration, and the plaintiff nonetheless sought to certify the subclass, which was denied without prejudice. *Id.* at 553–54.

The plaintiff filed a new motion to certify, again including the proposed subclass, reasoning that courts are not bound by the class definition proposed in a complaint. *Id.* at 554. The court again denied certification of the subclass. *Id.* By moving to amend, the plaintiff had effectively conceded that the operative complaint failed to place the defendant on notice of her class-wide challenge to male technicians photographing female detainees. *Id.* And the court resolved that she could not "circumvent that denial by introducing a new class of individuals in her motion to certify." *Id.*

So holds true for plaintiffs. Judge Pascal denied plaintiffs' motion to amend as untimely and also on the merits, determining in no uncertain terms that defendants had been operating with the understanding that the class was limited to specific retailer customers. (Aug. 19, 2024 Op. p. 13.) Plaintiffs did not challenge the decision and fail to adequately address it in their briefing. Instead, they seek to certify a class that—while reworded from the proposed amended complaint—similarly removes any limiting clause based on retailer customers. It is difficult then to arrive at a conclusion other than that plaintiffs are attempting to "circumvent" Judge Pascal's order. *See McDonald*, 306 F.R.D. at 554.

Even to the extent that I am not bound by Judge Pascal's decision, I see no reason to depart from its reasoning. While it is true that plaintiffs nor the Court are limited by the pleaded class definition, "when a modified class definition seeks to expand, instead of narrow, the scope of a putative class by adding more putative class members, new causes of action or claims not included in the complaint, courts may limit that practice where expansion

9

would unfairly prejudice a defendant." *Walden v. Bank of N.Y. Mellon Corp.*, Case No. 20–01972, 2025 WL 2696463, at *4 (W.D. Pa. Sept. 22, 2025) (collecting cases); *see also cf. Hassine v. Simon's Agency, Inc.*, Case No. 18–09031, 2021 WL 2646990, at *2–3 (D.N.J. Apr. 29, 2021) (permitting the plaintiff to narrow the proposed classes at certification).

*Bouton v. Ocean Properties, Ltd.*, 322 F.R.D. 683 (S.D. Fla. 2017), cited in *Walden*, is illustrative of this point.   There, the plaintiff sought to represent a class asserting violation of the Fair and Accurate Credit Transactions Act. *Bouton*, 322 F.R.D. at 687–88.   The pleaded class definition included those who made payments "at any one of Ocean Properties, Ltd.'s operated and/or controlled businesses …."   *Id.* at 688.   The plaintiff later sought to certify a class of those who made payments "at any one of Ocean Properties, Ltd.'s *affiliated,* operated and/or controlled businesses."   *Id.* at 693.   The court held that the plaintiff could not expand the scope of the proposed class at the certification stage to include entities and theories not pleaded and to permit so would amount to granting amendment beyond the instituted deadline.   *Id.* at 693–94.

The class definition presented here is similarly broader than what was pleaded.   Plaintiffs insist that the class definition has not changed and that Kolev himself worked out of both the Elwood and Minooka warehouses.   (Pls.' Reply Br. pp. 8, 9.)   But the fact that they could have pleaded a broader class definition does not mean that they did.   Plaintiffs may also cite to the opening paragraphs of the complaint rather than the class allegations and definition, but it is an exercise in sleight-of-pen.   That multiple warehouses were referenced in the opening paragraphs does not change the fact that the same retailer customers—Target, Starbucks, and Steinmart—were named throughout, including in the proposed class definition.   These references were

significant because specific warehouses served specific retailer customers. (Hayden Dep. Tr. pp. 27:17–33:21.)

Plaintiffs may have been unaware of the import of the inclusion of specific retailer customers at the time of the complaint. But no later than July 14, 2023—when National Freight submitted its amended responses to plaintiffs' first requests for production—plaintiffs were aware that defendants interpreted the inclusion of Target, Starbucks, and Steinmart as limiting the scope of the class. (*See* ECF No. 62–3.) Plaintiffs had seven weeks from that point to move to amend or otherwise address the apparent conflict pursuant to Judge Pascal's scheduling order. (ECF No. 51.) They failed to do so. The prejudice of plaintiffs' eleventh-hour effort to expand the class—persuasively identified by Judge Pascal—has only grown with time, the close of discovery, and the order itself.

In short, plaintiffs' asserted class definition ignores Judge Pascal's August 19, 2024 opinion and order and prejudicially seeks to expand the class definition after the deadline to amend. The Court will thus deny plaintiffs' motion to certify the class as defined in their moving papers.

### B.    Numerosity

It is within my discretion to revise the class definition to resolve the expanded scope addressed above. *See Boyle v. Progressive Specialty Ins. Co.*, 326 F.R.D. 69, 100 n.90 (E.D. Pa. 2018). The most direct revision might well be to conduct the Rule 23 analysis using plaintiffs' pleaded class definition. But doing so quickly results in a conflict with Rule 23(a)'s first requirement: numerosity.

Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In recent years the numerosity requirement has been given 'real teeth.'" *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 484 (3d Cir. 2018) (quoting Robert H. Klonoff,

11

*The Decline of Class Actions*, 90 Wash. U. L. Rev. 729, 768 (2013)).   Though there is no minimum threshold to maintain a class action, courts in this Circuit have generally found that the numerosity requirement is met when the potential number of plaintiffs exceeds 40.   *Id.* at 486.

Plaintiffs coast through this requirement in their moving brief, representing that at least 67 individuals contracted with NFI to perform deliveries in Illinois. (Pls.' Mot. Br. pp. 20–22.)   Defendants contradict plaintiffs' figure, asserting that there are only 38 class members.   (Defs.' Opp'n Br. p. 7.)   At that number, joinder is unlikely to be impracticable, according to defendants, and plaintiffs fail to demonstrate otherwise.   (*Id.* pp. 20, 21.)   On their own, defendants contend that the relevant factors do not support numerosity.   (*Id.* pp. 21–23.)

Plaintiffs respond that defendants' figure excludes drivers from locations other than Elwood when there is no basis for doing so.   (Pls.' Reply Br. pp. 14, 15.)   Even if the Court were to limit plaintiffs to the 38 drivers at Elwood, that number is just two fewer than the Third Circuit's benchmark of 40 and similar figures have been found to satisfy numerosity.   (*Id.* p. 15.)

Plaintiffs refer to Hayden's testimony on the number of drivers who delivered for each warehouse.   Hayden testified that 38 owner-operators worked at Elwood from 2011 to present.   (Hayden Dep. Tr. p. 33:10–15.)[6]   I

---

[6] Insofar as the parties distinguish between owner-operators and licensed motor carriers, Hayden testified that about 15 licensed motor carriers operated out of Elwood. (Hayden Dep. Tr. p. 36:11–15.)   Each transitioned from being an owner-operator to a licensed motor carrier. (*Id.* pp. 36:16–37:3.)   It is unclear then that there is a numerical difference in including or excluding licensed motor carriers, at least with respect to Elwood.   I also see no reason at this time to adjust the Elwood figure in light of the operating agreement with the Texas forum selection clause.   It is true that Judge Rodriguez, in later clarifying his certification decision in *Portillo*, stated that class members who signed an operating agreement with a New Jersey forum selection clause could recover for injuries suffered before the date they signed an operating agreement with a Texas forum selection clause.   *Portillo v. Nat'l Freight, Inc.*, Case No. 15–07908, 2021 WL 3486894, at *6 (D.N.J. Aug. 9, 2021).   That one potential class

adopt this figure in light of my conclusions above with respect to the class definition.

40 may not be a hard-and-fast threshold for numerosity, but classes of that size or greater enjoy a relaxed burden.   *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 896 (3d Cir. 2022).   Conversely, "the 'inquiry into impracticability should be particularly rigorous when the putative class consists of fewer than forty members.'"   *Id.* (quoting *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 250 (3d Cir. 2016)).   The number of class members is the starting point for determining the practicability of joinder, but other factors to be weighed include judicial economy, claimants' ability and motivation to litigate jointly, the financial resources of the class, the geographic dispersion of class members, the ability to identify future claimants, and whether injunctive relief or damages are sought.   *Id.* at 900.   Judicial economy and the ability to litigate jointly are of primary importance.   *In re Modafinil Antitrust Litig.*, 837 F.3d at 253.

Plaintiffs assert in their moving brief that they are of modest means and judicial economy would be served by class treatment given the common claims and proof.   (Pls.' Mot. Br. p. 22 n. 44.)   These points are repeated in their reply, along with an assertion that the forum selection clause renders geographic dispersion irrelevant and that attorney's fees could exceed damages, making joinder less desirable.   (Pls.' Reply Br. p. 15 n. 13.)

Plaintiffs raise understandable concerns in their briefing, but their conclusion that "[t]here is simply no good reason to require them to litigate individually," (*id.*) answers the wrong question.   Rule 23(a)(1) asks whether

---

member may not have started work until after the operating agreement was amended (*see* ECF No. 109–43) does not lead me to a distinct numerosity analysis.   The parties are directed to brief what effect—if any—the Texas forum selection clause may have on the merits of plaintiffs' claims and the choice-of-law analysis in any future certification or dispositive motion.

the putative class is so numerous that joinder would be impracticable, not whether denial of certification risks multiple separate lawsuits.  *See In re Modafinil Antitrust Litig.*, 837 F.3d at 253.

Even accepting the modest means of plaintiffs, plaintiffs' assertion that "[j]udicial economy would clearly favor numerosity, as the claims are identical and turn on identical proof" (Pls.' Mot. Br. p.22 n.44) does not make it so. Common claims and proof logically cut against finding that "the class action mechanism is substantially more efficient than joinder of all parties."  *In re Modafinil Antitrust Litig.*, 837 F.3d at 254; *see also Muse v. Holloway Credit Sols., LLC*, 337 F.R.D. 80, 86 (E.D. Pa. 2020) (noting that the plaintiffs all relied on a common form letter and there were no individualized issues of intent, causation, or reliance).  Plaintiffs' argument as to ability and motivation to litigate similarly seems to presume that the choice is between class certification and separate lawsuits.  *See Wright v. Ristorante La Buca Inc.*, Case No. 18–02207, 2018 WL 11579920, at *3 (E.D. Pa. Dec. 13, 2018) (finding that the plaintiff failed to show that some employees would be unable or unmotivated to join because they would recover small sums).   And while plaintiffs submit that the forum selection clause renders geography irrelevant, they do not support that principle and courts in this Circuit have found that proximity among plaintiffs favors joinder.  *See, e.g.*, *Muse*, 337 F.R.D. at 87 (noting that each potential class member resided in Pennsylvania, supporting joinder).

Finally, though plaintiffs did not brief the remaining factors, they state in support of ascertainability that class members can be identified relatively easily using operating agreements maintained by defendants.   (Pls.' Mot. Br. p.36.) This simplicity favors joinder.   *See Malvern Inst. for Psychiatric and Alcoholic Studies, Inc. v. Magellan Healthcare, Inc.*, Case No. 16–04772, 2018 WL 3831397, at *5 (E.D. Pa. Aug. 10, 2018).   Plaintiffs also seek monetary damages, not injunctive relief.   (Am. Compl. p.15.)   This factor, too, supports

14

joinder.  *See Ortiz v. Goya Foods, Inc.*, Case No. 19–19003, 2022 WL 3053907, at *6 (D.N.J. Aug. 3, 2022).

This analysis is not to definitively say that plaintiffs cannot meet the numerosity requirement.   Rather, I find that plaintiffs—who spend much of their briefs advocating for a more expansive class definition—have failed to support numerosity by a preponderance of the evidence.   Further, because a class may not be certified absent a finding that each Rule 23 requirement is met, *see Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 183 (3d Cir. 2019), I need not continue through the Rule 23 analysis having found that plaintiffs have not supported numerosity.

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion to certify at ECF No. 108 will be denied without prejudice.   An appropriate order accompanies this opinion.

    */s/ Edward S. Kiel*
    **EDWARD S. KIEL**
    **UNITED STATES DISTRICT JUDGE**

Dated:  June 26, 2026